## CONSOLIDATED GAS ELECTRIC LIGHT & POWER CO. OF BALTIMORE v. UNITED RAILWAYS & ELECTRIC CO. OF BALTIMORE et al. (two cases).
### Nos. 3945, 3988.

Circuit Court of Appeals, Fourth Circuit.
April 6, 1936.

On Rehearing Oct. 6, 1936.

800

See, also, In re United Railways & Electric Co. of Baltimore's Reorganization (D. C.) 11 F.Supp. 717.

Charles Markell, of Baltimore, Md. (Cook & Markell, of Baltimore, Md., on the brief), for appellant.

Edwin G. Baetjer, of Baltimore, Md. (Joseph C. France, Edgar Allan Poe, Charles McH. Howard, and Henry H. Waters, all of Baltimore, Md., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

In Consolidated Gas Electric Light & Power Company of Baltimore v. United Railways & Electric Company of Baltimore, 76 F.(2d) 535, we considered a contract for the sale of electric energy by the Power Company to the Railways Company, and decided a controversy which had arisen between the receivers of the Railways Company, in equity, and the Power Company as to the validity and effect of the instrument. We held that the contract had not been abrogated, as had been contended, and that the rate and amount payable for power furnished prior to and during the receivership should be determined in accordance with certain applicable provisions of the agreement, and remanded the case for further proceedings.

Our opinion was filed on April 2, 1935, and our mandate went down on May 6, 1935. Between these dates, to wit, on April 11, 1935, proceedings for the reorganization of the Railways Company were instituted under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The District Court appointed the former receivers as trustees; directed that the property of the debtor should be subject to the payment of all obligations incurred by the receivers; retained jurisdiction of pending proceedings in the receivership relating to contracts with and liabilities to the Power Company for power furnished prior to and since the appointment of receivers; and authorized the trustees at any time prior to July 1, 1935, notwithstanding any other period expired or unexpired fixed by any other order therein to elect to adopt or reject any executory contract.

A plan of reorganization was submitted by creditors on April 15, 1935. It provided for the issuance by the reorganized corporation of debentures, preferred stock, and no par common stock to be distributed in certain proportions to the bondholders, unsecured creditors, and stockholders of the debtor. Some of the bondholders and creditors received a portion of their allotment in debentures. Save for one class of bond-

holders of the debtor, all of the distributees, including bondholders, unsecured creditors, and stockholders, received all or a part of their allotments in preferred stock or no par common stock of the new corporation. No provision was made in the plan for the possible rejection of the contract in question and the payment of damages arising therefrom; although provision was made for the payment by the reorganized company of any sums that might be found to be due the Power Company in the pending litigation over the power contracts. A hearing on the plan was held on May 13, 1935, at which time the trustees filed a list of executory contracts, including the power contract. The plan was confirmed by the District Court on June 14, 1935, by an order which reserved for further determination the question of the affirmance or rejection of all of the executory contracts on the list. Minor modifications of the plan followed, and on July 18, 1935, the modified plan was approved, the court again reserving jurisdiction to instruct the receivers with respect to the disaffirmance of the contract in question, and in the event of such disaffirmance, to determine what, if any, damages might be due the Power Company and to provide for the payment of any amount so due by the reorganized corporation. From this reservation of jurisdiction, these appeals were taken.

Two questions are presented: (1) Whether the receivers in the equity proceeding or their successors, the trustees in the reorganization proceeding, have in effect adopted the contract with the Power Company; and (2) whether the District Court, in the event that the contract has not been adopted, had the power under section 77B of the Bankruptcy Act to finally confirm the plan of reorganization which made no provision with respect to the disaffirmance of the contract, and at the same time to reserve jurisdiction to instruct the receivers (the trustees) with respect to such disaffirmance and the resulting damages.

 The Power Company contends, in the first place, that before July 18, 1935, the contract had already been adopted on behalf of the Railways Company on account of the expiration of the time allowed by the court for disaffirmance; the continued demand and acceptance of performance by the prosecution of the prior litigation to enforce the rates provided by the contract; and by the failure to disaffirm or to make a new contract promptly after this court's decision on the prior appeal. In this connection, certain additional facts should be stated. The parties had never reached an agreement as to the meaning of the contract although it had been in force since 1921. During the progress of the receivership, the period of election as to the acceptance or rejection of executory contracts by the receivers had been extended from time to time to October 5, 1934. In the meantime, the controversy over the power contract had been carried to the District Court which held on June 11, 1934, that the contract had been abrogated, and fixed what it regarded as a reasonable rate on the basis of an implied contract. Then the case came on appeal to this court, whose decision, as we have seen, became effective by mandate on May 6, 1935. Further proceedings in the District Court which, at the time of the pending appeal had not been had, were still necessary to determine the applicable rate. Under these circumstances it is manifest that neither the receivers nor the trustees adopted the contract expressly or by implication. Before the period fixed for election had expired on October 5, 1934, they had obtained a decision of the District Court that the contract had been abrogated by consent and were awaiting an opportunity to defend that finding in this court. Nor were they required after the decision of this court to make an election on or before July 1, 1935, in literal compliance with the general order of April 11, 1935, since that order could not have been intended to relate to a contract whose terms, even then, awaited final settlement by the District Court. But even if it should be supposed that July 1, 1935, was the binding date, it was within the reasonable discretion of the court under the special circumstances to reopen the matter a few days later on July 18, 1935, so as to preserve the Railways Company's right of election. For cases which hold that a receiver has a reasonable time, which may be fixed in the discretion of the court, within which to adopt or reject executory contracts, see Sunflower Oil Co. v. Wilson, 142 U.S. 313, 322, 12 S. Ct. 235, 35 L.Ed. 1025; Quincy, Mo. & Pac. R. Co. v. Humphreys, 145 U.S. 82, 99, 12 S.Ct. 787, 36 L.Ed. 632; United States Trust Co. v. Wabash Western R. Co., 150 U.S. 287, 299, 14 S.Ct. 86, 37 L.Ed. 1085; Fleming v. Noble (C.C.A.) 250 F. 733; Pennsylvania Steel Co. v. New York City R. Co. (C.C.A.) 198 F. 721, 729; American Brake Shoe & Foundry Co. v. New York Rys. Co. (D.C.) 278 F. 842; Peabody Coal

Co. v. Nixon (C.C.A.) 226 F. 20; Landon v. Public Utilities Comm. of Kansas (D.C.) 245 F. 950; General Finance Corp. v. New York State Rys. (C.C.A.) 54 F.(2d) 1008; Pacific Western Oil Co. v. McDuffie (C.C.A.) 69 F.(2d) 208.

■ The right to reject the power contract in this case was not lost either because it had been accepted by the receivers or the trustees or because the time within which an election to accept or reject should be exercised had expired. We must therefore consider whether the right was lost through the course which was pursued when the receivership in equity was superseded by the reorganization proceeding under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. This section provides that a plan of reorganization may reject executory contracts of the debtor, subsection (b) (6), 11 U.S.C.A. 207(b) (6); that in case any creditor shall not be affected by the plan, it shall so specify and shall contain such provisions with respect thereto as may be appropriate, subsection (b) (7), 11 U.S.C.A. § 207(b) (7); that the term "creditor" shall include for all purposes of the section and of the reorganization plan, its acceptance and confirmation, all holders of claims of whatever character, including claims under executory contracts; and that in case an executory contract shall be rejected pursuant to the direction of the judge in a proceeding under the section, or shall have been rejected by a trustee or receiver in bankruptcy or a receiver in equity in a prior proceeding, any person injured thereby shall for all purposes of the section and of the reorganization plan, its acceptance and confirmation, be deemed a creditor, subsection (b) (10), 11 U.S.C.A. § 207(b) (10). The judge has the power upon approving the petition or at any time thereafter to direct the rejection of executory contracts of the debtor, subsection (c) (5), 11 U.S.C.A. § 207(c) (5). Other provisions of the section relative to creditors are also pertinent. For example, a plan of reorganization must specify what claims, if any, are to be paid in cash in full, subsection (b) (8), 11 U.S.C.A. § 207(b) (8). The judge is empowered to fix a reasonable time within which the claims of creditors may be filed, and after which no claim may participate in a plan; and to divide creditors into classes for the purposes of the plan and its acceptance and to cause notice to be given of the time for filing claims and for holding hearings for the consideration of plans, subsection (c) (6) and (7), 11 U.S.C.A. § 207(c) (6, 7).

The trustees rely particularly upon subsection (h) 11 U.S.C.A. § 207(h), which provides that upon the final confirmation of a plan, the debtor shall carry it into effect and that the property dealt with by the plan shall be free and clear of all claims of the debtor, its stockholders and creditors, "except such as may be consistently with the provisions of the plan be reserved in the order confirming the plan"; and that the final decree upon the confirmation of the proceedings "shall discharge the debtor from its debts and liabilities, and shall terminate and end all rights and interests of its stockholders, except as provided in the plan or as may be reserved as aforesaid." It is pointed out that the purpose of the statute is to afford a simple and speedy method of reorganization, and that to accomplish this purpose, it will frequently be convenient or necessary to reserve the question of adoption or rejection of executory contracts until after a plan has been confirmed. Similar conditions, as the books show, have given rise to the practice in foreclosure proceedings of allowing the purchaser a reasonable time within which to adopt or reject contracts not previously adopted or rejected by the receivers. See Guaranty Trust Co. v. Metropolitan St. Ry. Co. (C.C.A.) 177 F. 925, 930; 46 Harvard Law Review, 1111, 1136. Despite this practical consideration of convenience, we are of opinion that the reservation in the pending case was inconsistent with the plan of reorganization and with the terms of the statute concerning the claims of creditors. It was not possible for the Power Company to proceed as a creditor entitled to damages for breach of the contract prior to the ratification of the plan of reorganization, because the contract had not then been rejected, either by the plan or by the District Court. Hence the Power Company could not file a claim as creditor, with reference to the contract, or participate in that capacity in the acceptance or confirmation of the plan; nor could provision be made in the plan for the payment of the claim in cash in full, or, as was done with other unsecured claims, for the issuance on account thereof of common stock of the reorganized company. Nor could the claim be listed as one not affected by the plan, because prior to the rejection of the contract the claim could have no existence. These observations would apply in the case of any executory contract; and hence we conclude that if an executory contract is to be rejected on behalf of the debtor so as to give

the other contracting party the status of an unsecured creditor, the right of rejection must be exercised in the plan of reorganization, or upon the direction of the judge, before the plan is confirmed. This must be so not only because an injured contractor must be given an opportunity to share as a creditor in the formation of the plan and the distribution of securities, but also because the kind and amount of securities to be allotted to the several classes of creditors must be disclosed in any plan that is submitted to the creditors and stockholders for their acceptance. The same interpretation was given to subsection (c) in Re Chase Commissary Corporation (D.C.) 11 F. Supp. 288, 289, where it was said that the court in the course of administration and prior to confirming a plan, may direct rejection of executory leases. See, also, In re 211 East Delaware Place Bldg. Corporation (C.C.A.) 76 F.(2d) 834, 837; In re Cheney Bros. (D.C.) 12 F.Supp. 605.

The practice of reserving such a question in foreclosure proceedings until after the sale of the property is feasible because the sale and transfer of the corporate assets to the purchaser is not necessarily contemporaneous with the distribution to creditors, and the opportunity is still open to make compensation for the damages which the breach of contract may occasion. Moreover, foreclosure and sale do not depend upon the consent of all classes of creditors affected. But in the pending case, the plan of reorganization, to which the creditors gave their assents, provided not only for a conveyance by the trustees of all of the assets of the debtor to the reorganized company (which included the contract in question), but for a distribution of the new securities to the creditors and shareholders in predetermined amounts; and when the transfer and distribution were made, no assets remained in the hands of the trustees with which to compensate the Power Company for such loss as it might suffer through the abandonment of the contract.

We do not mean to say that a plan, submitted to creditors, may not itself reserve the question of the rejection of an executory contract of the debtor and provide for the payment of damages in cash or in stock, reserved for that purpose or to be furnished by a new or reorganized company. That question is not before us. The reservation in the pending case was not made in the plan submitted to the creditors but in the confirmatory order of the court of July 18, 1935. The court reserved the right to determine the damages in case of disaffirmance of the contract and to provide for the payment thereof by the reorganized company. On the surface the meaning seems to be that the court would direct the reorganized company to pay the full amount of the damages incurred in cash to the Power Company, and if this be correct, it would mean the payment of a creditor in cash for the full amount of its claim not disclosed by the plan as required by the statute; and in addition, the preferential treatment of the Power Company as compared with other unsecured creditors who were given common stock in discharge of their claims. We are told by the trustees that the true meaning of the reservation is that if the Power Company's contract should be rejected, the Power Company would become an unsecured creditor of the insolvent company to the extent of the damages and that the Power Company would be entitled to the compensation provided in the plan for unsecured creditors, that is, common stock; but even this interpretation of the order does not bring it within the scope and purpose of the act, because it would require the alteration of a plan that the creditors have accepted, and would diminish the share which the creditors and stockholders have received as stockholders in the reorganized company. Similarly it was held proper to exclude an unsecured creditor, who had not filed his claim against a debtor in a reorganization proceeding before the confirmation of the plan of reorganization, from the right to share with other unsecured creditors, because to do otherwise would be to put into effect a different plan to which the other creditors had never consented. In re Diana Shoe Corporation (C.C.A.) 80 F.(2d) 92.

It should also be noticed that the change of plan ignores the requirement of subsection (e) (2), 11 U.S.C.A. § 207 (e) (2), that a plan for the reorganization of an intrastate public utility corporation, subject to the jurisdiction of a state regulatory commission, must receive the prior approval of the commission if the commission certifies that the public interest is affected by the plan. The plan approved by the District Court received the prior approval of the Public Service Commission of Maryland but the reservation in the confirmatory order was not submitted to the commission.

It is quite obvious that the reservation was made by the District Court for the laudable purpose of expediting the reorganization of a utility which greatly affected the public welfare of the municipality.

804

Moreover, it was apparent to the court that certain concessions which had been made by the municipal authorities might be lost if the proceedings were delayed until the controversy over the power contract should be finally settled in litigation. We think, however, that these considerations must yield to the exactions of the statute, and that jurisdiction over any controversy which may hereafter arise between the parties concerning the contract will not be governed or affected by section 77B of the National Bankruptcy Act.

█ The order of July 18, 1935, appealed from is reviewable under section 24b of the Bankruptcy Act, as amended, 11 U.S. C.A. § 47(b), and it should be modified by the elimination of the reservation with respect to the power contract. Campbell v. Alleghany Corporation (C.C.A.) 75 F.(2d) 947, 955; Meyer v. Kenmore Granville Hotel Co., 56 S.Ct. 405, 80 L.Ed. 557. In case No. 3988 the appeal is therefore dismissed, and case No. 3945 is remanded to the lower court for further proceedings in accordance with this opinion.

In No. 3988, appeal dismissed.

In No. 3945, case remanded.

## On Rehearing.

█ After reargument of the case and reexamination of the questions involved, we adhere to the conclusion reached in the original opinion. The appellee has directed its reargument particularly to our conclusion that the Power Company, in its capacity as a party to the unrejected contract for the sale of electric energy to the Railways Company, was not a creditor thereof holding a claim that should have been filed in accordance with subsections (c) (4) (a) and (c) (6) of section 77B of the Bankruptcy Act (11 U.S.C.A. § 207 (c) (4) (a) and (6). Our attention has been called to that part of subsection (b) (10), 11 U.S.C.A. § 207 (b) (10) not stressed in the first argument, which in connection with the definition of the term "creditors" defines the term "claims." The provision is as follows: "The term 'creditors' shall include for all purposes of this section and of the reorganization plan, its acceptance and confirmation, all holders of claims of whatever character against the debtor or its property, including claims under executory contracts, whether or not such claims would otherwise constitute provable claims under this title. The term 'claims' includes

debts, securities, other than stock, liens, or other interests of whatever character."

It is suggested that one who is party with the debtor to an unrejected executory contract is possessed of an interest of a definite character and is therefore a holder of a claim against the debtor; that is, he becomes a creditor clothed with the rights and duties imposed upon creditors by the terms of the act. Hence it is contended that the holder of such a contract must file it as a claim in the proceeding, and see to it that he is specified in the plan as a creditor not affected thereby as provided in subsection (b) (7), 11 U.S.C.A. § 207 (b) (7), or else upon confirmation the plan will be binding upon him under subsection (g), 11 U.S.C.A. § 207 (g), and, moreover, all of his rights under the contract will be lost, because subsection (h), 11 U. S.C.A. § 207 (h), provides that upon final confirmation of the plan, the property dealt with therein, when transferred to the reorganized corporation, shall be free and clear of all claims of creditors except such as consistently with the plan may be reserved therein, and that the final decree in the proceedings shall discharge the debtor of all its debts and liabilities except such as may be provided in the plan or may be reserved as aforesaid.

If these conclusions are sound, it was quite unnecessary for the debtor to secure from the court the reservation in its order of July 18, 1935, with regard to the power contract in order to extinguish it, and that reservation must be regarded merely as an act of grace saving the company from the loss of all of its rights under the contract consequent upon its inaction. But we think that these conclusions are not sound. Other statutory provisions convince us that a claim under an executory contract does not arise within the meaning of the act until the contract has been rejected. It will be observed that no attempt is made in the portion of subsection (b) (10), 11 U.S.C.A. § 207 (b) (10), quoted above, to list the various kinds of debts, securities, liens, and other interests of whatever character included within the term "claims." The intent to cover a wide range of claims is patent, but only one kind of claims, to wit, claims under executory contracts, is particularized. Elsewhere in section 77B are also found special references thereto. Thus subsection (b) (6), 11 U.S.C.A. § 207 (b) (6), declares that a plan of reorganization "may reject contracts of the debtor which

are executory in whole or in part, including unexpired leases"; subsection (c) (5), 11 U.S.C.A. § 207 (c) (5), provides that the judge, upon approving the petition or answer, or at any time thereafter, "may direct the rejection of contracts of the debtor executory in whole or in part"; and subsection (b) (10) provides that "in case an executory contract or unexpired lease of real estate shall be rejected pursuant to direction of the judge given in a proceeding instituted under this section, or shall have been rejected by a trustee or receiver in bankruptcy or receiver in equity, in a proceeding pending prior to the institution of a proceeding under this section any person injured by such rejection shall, for all purposes of this section and of the reorganization plan, its acceptance and confirmation, be deemed to be a creditor."

■■ The party to an executory contract would find it difficult to state a claim under the contract before it had been broken; and certainly neither the debtor nor the trustees could set out the amount of such a claim as required by an order of court directing the filing of schedules in accordance with subsection (c) (4) (a), 11 U.S. C.A. § 207 (c) (4) (a), and the holder of a contract would have a like difficulty in complying with the customary order of the judge with reference to the filing of claims by creditors under subsection (c) (6), 11 U.S.C.A. § 207 (c) (6). Besides these formal difficulties, other reasons indicate that the trustees of the debtor rather than the other party should take the initiative to determine the future status of the contract. The trustees of the debtor in this case did take steps to bring the power contract to the attention of the court. The order of April 11, 1935, approving the petition filed by the debtor, appointed the former receivers as trustees, with all the title of trustees appointed pursuant to the Bankruptcy Act in all the estate and property of the debtor, including inter alia "rights under liens or contracts subject to disaffirmance or rejection." An executory contract may constitute a valuable asset of the debtor and it is established practice in equity and bankruptcy proceedings to accord to the representatives of the debtor the right or option to affirm or reject the obligation. Central Trust Co. v. Chicago Auditorium Ass'n, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811, L. R.A. 1917B, 580; Gaston v. Rutland R. Co. (C.C.A.) 35 F.(2d) 685. So in this case, we find that a number of orders were passed by the court at the instance of the trustees extending the period within which the right of disaffirmance might be exercised; and the final step to this end was the reservation in the order of July 18, 1935, which is the subject of this appeal. In this connection, the distinction between the ordinary proceeding in bankruptcy and a proceeding under section 77B (11 U.S.C.A. § 207) for corporate reorganization is significant. Bankruptcy contemplates the sale of the bankrupt's property and a distribution of the proceeds to the creditor; and the intervention of bankruptcy constitutes a breach of an executory contract, if the trustee does not elect to assume its performance, and gives rise to a provable claim. Central Trust Co. v. Chicago Auditorium Ass'n, supra. Section 77B, on the other hand, does not contemplate the surrender and sale of the debtor's assets, but rather the transfer of the property, including executory contracts and leasehold estates not affirmatively rejected, to a reorganized body for the continuance of the business. An executory contract, therefore, remains in force in a proceeding under section 77B until it is rejected, and unless rejected, it passes with other property of the debtor to the reorganized corporation.

In harmony with this view, as we have seen, section 77B provides for the rejection of executory contracts in the plan of reorganization, subsection (b) (6), or by direction of the judge, subsection (c) (5), and also contains the express enactment in subsection (b) (10) that the holder of an executory contract shall for all purposes of the section be deemed a creditor when the contract has been rejected at the direction of the judge, a provision quite unnecessary if, as the appellee contends, the holder of such a contract, rejected or not, is a creditor simply because he has an interest in the agreement. We are not impressed by the suggestion of the appellee that this part of subsection (b) (10) refers merely to future rent claims and that the words "executory contracts" therein were intended to cover only leases of personal property or contracts difficult to distinguish from leases. The words "executory contracts" in this context should have the same breadth of meaning as in the earlier part of the same subsection where they are used in connection with the definition of the term "creditors," and in subsections (b) (6) and (c) (5) where they are obviously intended to cover executory contracts generally.

806

We referred in the opinion to the possibility that the plan itself might reserve the right thereafter to reject an executory contract with suitable provision for compensation for such damages as might be caused thereby, a question not before us in this case. Reference may also be made to subsection (f) (7) of section 77B (11 U.S.C. A. § 207 (f) (7), which provides that before or after a plan is confirmed, changes may be proposed therein by any party in interest and may be made with the approval of the judge after hearing upon notice, subject to the right of any stockholder or creditor to withdraw his acceptance within a prescribed period, provided certain provisions of the section as to the content of a plan and its acceptance are met. This provision of the statute, however, is not invoked in the present case, for while the appellee refers to the power of the court to modify the plan subject to the right of accepting parties adversely affected to withdraw, it is conceded that the question of how far the plan can now be modified is not before us. With this position we agree, for it seems clear that the purpose of the appellee was to reserve the right to reject the power contract and at the same time to secure a final confirmation of the plan without the delay that resubmission of the plan to the interested parties would have entailed.