558 F.2d 1369
 In the Matter of TILCO, INC., and its wholly owned
subsidiaries, Leben Oil Corporation, Leben Drilling, Inc.,
Natural Resources Fund, Inc., Interscience Capital
Management Corporation, Natural Financial Corporation,
Custer City Mining Corporation, Drillers-Producers Pipe &
Supply Company, Inc., Leben Lab Inc., Ruex, Inc., and Vamp
Sales, Inc., Debtors.
Howard J. CAREY, Jr., Trustee, Appellant,
v.
MOBIL OIL CORPORATION, Anadarko Production Company, et al., Appellees.
 No. 76-1274.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted May 16, 1977.
Decided June 23, 1977.
Rehearing Denied Aug. 30, 1977.
 
 Paul M. Buchanan, Wichita, Kan. (Curfman, Brainerd, Harris, Bell, Weigand & Depew, Wichita, Kan., with him on brief, of counsel), for appellant.
 Edward F. Arn and Robert J. O'Conner, Wichita, Kan. (Richard Jones, David C. Adams, Wichita, Kan., Robert W. Reed, St. Louis, Mo., C. C. Linley, Liberal, Kan., Patrick J. McCarthy and Robert J. Hammer, Omaha, Neb., with them on brief), for appellees.
 Frederic Dorwart, Tulsa, Okl., for debtors.
 Before LEWIS, Chief Judge, and BREITENSTEIN and DOYLE, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 In this Chapter X reorganization proceeding the Trustee in bankruptcy sought to reject executory contracts for the sale of natural gas by a subsidiary of the debtor to the appellees, Mobil Oil Corporation, et al. The district court denied the application to reject and the Trustee has appealed. We reverse.
 
 
 2
 Tilco, Inc., filed a petition in the United States District Court for the District of Kansas for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq., and a trustee was appointed. Leben Oil Corporation, a wholly owned subsidiary of Tilco, operated certain properties producing oil and gas which Leben had contracted to sell to appellees. The gas sales are, at least in part, subject to the jurisdiction of the Federal Power Commission and the gas reserves dedicated to interstate commerce.
 
 
 3
 On September 26, 1974, the Trustee submitted a "Second Amended Plan of Reorganization" under which all existing Tilco stock was to be cancelled and a new common stock was to be issued to George B. Kaiser and Charles Shusterman (K&S), or their designees, for $2,657,777.00. Art. IV of the plan said with regard to the gas sale contracts that "(u)pon notice and hearing, the Court may authorize the Trustee to reject any or all of the * * * executory contracts * * *." The holders of the contracts were to become Class Five (general unsecured) creditors of the debtor to the extent of any damage suffered because of the rejection of the contracts. Class Five creditors were not expected to be paid in full but would receive a pro rata share of their claims. The reason for possible rejection of the contracts was a price rise in natural gas which made the contract prices below the market price.
 
 
 4
 In its November 11, 1974, order confirming the plan the court, in response to the concern of a gas purchaser over the timing of a possible rejection of its contracts, required that rejection proceedings relating to those contracts should be filed by February 28, 1975. On January 30, 1975 the Trustee filed with the court (1) an application to reject the executory gas contracts, (2) an "Application in Aid of Partial Consummation of Plan," and (3) a "Closing Agreement" between the Trustee and K&S.
 
 
 5
 The "Application in Aid" said that K&S had tendered the balance due on the new common stock and that the Trustee had "relinquished the possession and control of all the assets to be transferred as a part of the Plan of Reorganization."
 
 
 6
 Paragraph 8 of the "Closing Agreement" said that the Trustee agreed to prosecute his application for rejection of the contracts "diligently and to use his best efforts to obtain court approval of the cancellation of the Gas Contracts." K&S agreed to pay the Trustee 22.5% of any increase in the gas price, due to the rejection, for three years after the date of the final order of rejection.
 
 
 7
 The court approved the "Application in Aid" and reserved ruling on the application for rejection of the gas contracts. The purchasers under the gas contracts filed responses to the Trustee's application for rejection. After briefing and argument, the court refused to allow rejection. In so doing the court said that on the date of the filing of the application to reject, January 30, 1975, the Trustee had transferred the assets of Tilco, including the gas contracts, to K&S and held that the contracts were not those of the debtor as required by 11 U.S.C. § 516, and accordingly the Trustee had no standing to seek their rejection. As an alternative ground the court found that the Trustee had failed to show that the contracts were a burden on the estate and that no hearing in this regard was necessary because the files and pre-trial record showed that the contracts had produced and were producing substantial net revenues to the debtor. The court's opinion is reported as Matter of Tilco, Inc., D.Kan., 408 F.Supp. 389.
 
 
 8
 Preliminarily it should be noted that Chapter X permits the rejection of executory contracts "except contracts in the public authority." See 11 U.S.C. §§ 516(1) and 616(4) and 408 F.Supp. at 392. The court held that the gas contracts were executory contracts, Ibid. at 398-400, and were not contracts "in the public authority." Ibid. at 395-398. The court also held that it could act without infringing on the jurisdiction of the Federal Power Commission under the Natural Gas Act. Ibid. at 394-395. None of these rulings are attacked on this appeal.
 
 
 9
 The power to reject an executory contract lies in the reorganization court. In re American National Trust, 7 Cir., 426 F.2d 1059, 1064, and Texas Importing Co. v. Banco Popular de Puerto Rico, 5 Cir., 360 F.2d 582, 584. In holding that the Trustee lacked standing the court relied on First State Bank and Trust Company of Guthrie, Oklahoma v. Sand Springs State Bank of Sand Springs, Oklahoma, 10 Cir., 528 F.2d 350. That case involved a dispute between creditors over rights to certain certificates of deposit issued more than four months before bankruptcy. We held that the bankruptcy court did not have jurisdiction because "a bankruptcy court ordinarily lacks jurisdiction of a controversy between parties over a matter in which the trustee asserts no interest." Ibid. at 353.
 
 
 10
 The instant case is different. The Trustee has an interest because the debtor estate stands to gain part of any increase in the contract price. Unlike First State Bank the reorganization court had jurisdiction over the contracts, at least until the transfer of the assets. If the court retained jurisdiction after the transfer of all assets to K&S, the Trustee had standing.
 
 
 11
 The record shows reservation of jurisdiction. The court approved reorganization plan says that the court may authorize the Trustee to reject executory contracts. The order of confirmation required the debtor corporations to take "all action necessary to carry out the plan," and required the Trustee to file proceedings for the rejection of the executory contracts with a certain company by a fixed date. The court approved the closing agreement between the Trustee and K&S which obligated the Trustee to seek rejection of the executory contracts.
 
 
 12
 The gas purchasers say that the court only agreed to give the Trustee a hearing on the rejection of the contracts. No hearing could be had without the reservation of jurisdiction. The power of the court to reserve jurisdiction must be determined.
 
 
 13
 In Consolidated Gas Elec. L. & P. Co. v. United Rys. & Elec. Co., 4 Cir., 85 F.2d 799, the court disapproved a reorganization court's attempt to retain jurisdiction over the issue of disaffirmance of an executory contract after confirmation of the reorganization plan. In so doing the court pointed out that the plan submitted to the creditors did not reserve the rejection issue. Ibid. at 803. The plan before us says that the court may authorize the Trustee to reject the executory gas contracts.
 
 
 14
 The jurisdiction and power of the reorganization court must appear in the Bankruptcy Act. See e. g. Ruhter v. Internal Revenue Service, 10 Cir.,339 F.2d 575, 577, and O'Dell v. United States, 10 Cir., 326 F.2d 451, 455. Section 226 of the Act, 11 U.S.C. § 626, provides that property transferred in accordance with the plan shall be free and clear of claims of the debtor, the creditors, and stockholders "except such claims and interests as may otherwise be provided for in the plan or in the order confirming the plan or in the order directing or authorizing the transfer or retention of such property." Thus the Act contemplates retention of jurisdiction in some circumstances. Reorganization courts have been permitted to retain jurisdiction after transfer of assets to assure the consummation of the approved plan. See e. g. In re Seminole Park and Fairgrounds, Inc., 5 Cir., 502 F.2d 1011, 1014; National City Bank of New York v. O'Connell, 2 Cir., 155 F.2d 329, 332, and In re George F. Nord Bldg. Corp., 7 Cir.,129 F.2d 173, 176, cert. denied Kausal v. 79th and Escanaba Corp., 317 U.S. 670, 63 S.Ct. 75, 87 L.Ed. 538. The retention by the bankruptcy court of jurisdiction over the reorganized debtor or its successor corporation depends on the particular facts. In re Pittsburgh Terminal Coal Corp., 3 Cir., 183 F.2d 520, 522, cert. denied 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654.
 
 
 15
 The gas purchasers argue that the cases which permit retained jurisdiction are concerned with situations affecting important or crucial aspects of a reorganization plan. They say that in the instant case the rejection of the executory contracts was a non-essential element of the plan. We do not agree. The reorganization plan recognized that the court might authorize the Trustee to reject the contracts. In the "Closing Agreement" the Trustee obligated himself to use his best efforts to get court approval of cancellation of the gas contracts. We may not disregard positive statements. We do not have an effort to have the court "wet nurse" the reorganized corporation. The interested parties have recognized the possibility of rejection of the gas contracts and the Trustee has acted expeditiously. We are convinced that the court retained jurisdiction over an application by the Trustee to reject the contracts.
 
 
 16
 The court held, as an alternative ground for the disallowance of the Trustee's application, that the Trustee had failed to carry his burden of proving that the executory contracts were "burdensome." The court said that it was unnecessary to hold a hearing on the matter because the record revealed that the contracts had produced substantial net revenues. During a 101/2 month accounting period in 1973, the net income to the bankruptcy estate was $107,688.07.
 
 
 17
 It has been argued that the trustee must show either that the bankruptcy estate cannot perform or that performance will be unprofitable. See American Brake Shoe & F. Co. v. New York Rys., S.D.N.Y., 278 F. 842. Other authorities require only that the trustee show that rejection of the contract would be beneficial to the bankruptcy estate. See Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 461 n. 87; and Silverstein, Rejection of Executory Contracts in Bankruptcy and Reorganization, 31 Chi.L.Rev. 467, 475.
 
 
 18
 Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959, involved a railroad reorganization. The Court equated leases with executory contracts and said, Ibid. at 550, 63 S.Ct. at 743, "the question whether a lease should be rejected and, if not, on what terms it should be assumed is one of business judgment." In King v. Baer, 10 Cir., 482 F.2d 552, 557, cert. denied 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473, we referred to the "business judgment" rule of Institutional Investors and upheld the rejection of executory contracts by the bankruptcy court as within its discretion. The "business judgment" principle applies to the situation before us. The production of substantial net revenue in the past is not determinative.
 
 
 19
 Rejection of the gas contracts may or may not be beneficial to the bankrupt estate. Approval of contract price changes for gas dedicated to interstate commerce must be obtained from the Federal Power Commission. The debtor estate receives 22.5% of the increase for a three year period but is liable for damages caused by contract rejection.
 
 
 20
 The difficulty is that the court denied the Trustee's application because the contracts were income productive. The court acted without any hearing on the benefits or detriments to the bankruptcy estate that might result from contract rejection. The Trustee was entitled to an evidentiary hearing. The court, not the Trustee, must apply the "business judgment" test. It cannot do so without presentation of the facts and the making of findings subject to appellate review. Absent abuse of discretion the judgment of the district court will prevail. King v. Baer, 482 F.2d at 557-558.
 
 
 21
 Reversed and remanded for further proceedings in the light of this opinion.