**In re MIDWEST POLYCHEM,
LTD., Debtor.**

**Bankruptcy No. 84 B 12484.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 9, 1986.

Richard R. Fimoff, Holleb & Coff, Chicago, Ill., for debtor.

Thomas F. Ging, Reuben & Proctor, Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

FREDERICK J. HERTZ, Bankruptcy Judge.

This case comes to be heard on the motion of the debtor, Midwest Polychem, Ltd. ("Polychem"), to reject an executory contract pursuant to 11 U.S.C. Section 365(a). United States Movidyn Corporation ("Movidyn"), the other contracting party, opposes the motion on the basis that the contract at issue is not "executory" within the meaning of Section 365(a) and even if the contract is executory, rejection is not in the estate's best interest. Movidyn, therefore, seeks to enforce the remaining contractual terms. Having heard counsel and considered the pleadings and briefs filed herein, this Court denies the debtor's motion to reject an executory contract.

### I

In July 1984, Polychem and Movidyn entered into a contract[1] entitled "Manufacturing Agreement Between United States Movidyn Corporation and Midwest Polychem, Ltd." As part of its business, Movidyn markets an antifreeze for use in recreational vehicles. Under the contract between the parties, Movidyn supplied Polychem with its antifreeze formula and other materials. Polychem then "blended" the antifreeze, packaged it, and shipped it to Movidyn's customers. As one might expect, the manufacture and sale of this antifreeze is seasonal, with an active marketing season from August 1 through November 30.

The marketing agreement between the parties commenced August 1, 1984, and provided for termination upon 90-day written notice by either party. Neither party, however, could terminate the contract before the 1984 marketing season ended on December 1. The contract also provided that upon termination Polychem refrain from marketing or selling an antifreeze produce for two years or from disclosing the formulation.

Throughout the 1984 marketing season, Polychem and Movidyn operated under the terms of the manufacturing agreement.

---

1. For purposes of this motion, the debtor admits to the existence of a binding contract between the parties. The debtor attempts to reserve its rights to challenge the validity of the contract should the court deny its motion.

When Polychem filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the middle of the 1984 marketing season on October 3, 1984, the relationship between the parties went undisturbed. Polychem continued to "blend" antifreeze and Movidyn paid the debtor for services rendered.

For the 1985 marketing season, Movidyn decided not to use the services of Polychem for manufacturing its antifreeze because of dissatisfaction with the debtor's performance the previous year. Movidyn, however, never formally served Polychem with notice of termination of the manufacturing agreement as required.

Polychem filed its motion to reject the contract between Movidyn and the debtor on August 2, 1985, shortly after the start of the 1985 marketing season. Polychem wishes to reject the contract so that it may expand its business into antifreeze and compete against Movidyn.

Movidyn, who filed a Chapter 11 bankruptcy petition of its own on February 7, 1985, countered with a motion to dismiss Polychem's motion on October 2, 1985. Movidyn argues that the contract should be upheld because either the contract is not "executory" and subject to rejection or rejection of the contract is not in the best interest of the debtor's estate.

For the reasons stated below, this court denies Polychem's motion to reject an executory contract and thereby effectively grants Movidyn's motion to dismiss.

## II.

The first task before this court is to determine whether the contract at issue is "executory." For § 365(a) of the Bankruptcy Code only provides for rejection of contracts which are executory.[2] In order to approve Polychem's rejection, the manufacturing contract must be found "executory."

### A. Is the Contract Executory?

Unfortunately, the Bankruptcy Code does not define what constitutes an "exec-

utory contract." The legislative history, however, indicates that "though there is not precise definition of what contracts are executory, it generally includes contracts on which performance is due to some extent on both sides." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 347 (1977), Reprinted in U.S.Code Cong. & Admin.News, 1978, pp. 5787, 6303.

Professor Countryman offers a more precise definition of an executory contract which this court has previously adopted. See, *In re California Steel Co.*, 24 B.R. 185, 187 (Bankr.N.D.Ill.1982). An executory contract is "[a] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973). See also *In re Rovine Corporation*, 6 B.R. 661, 664 (Bankr.W.D.Tenn.1980). Thus, for a contract to be "executory," performance to some extent must remain for each side at the time of the filing of the bankruptcy petition. *In re California Steel Co.*, 24 B.R. 185, 187 (Bkrtcy.N.D.Ill.1982).

In the instant case, the pertinent bankruptcy petition was filed October 4, 1984. At this time, performance of obligations on both sides unequivocally remained. This date fell in the middle of the 1984 marketing season and neither party can deny that substantial performance remained on both sides. Therefore, the contract is without a doubt executory within the meaning of § 365(a) and thereby subject to rejection.

### B. Should the Court Approve Rejection of the Executory Contract?

The Bankruptcy Code mandates court approval for the assumption or rejection of an

---

**2.** Section 365(a) of the Bankruptcy Code provides: "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Sec-

tion 1107(a) of the Code arms both debtors, Movidyn and Polychem, with the powers of a trustee.

executory contract. See 11 U.S.C. § 365(a). Courts do not merely rubber stamp its approval of the trustee's or debtor-in-possession's decision to reject or assume an executory contract.

To date, courts have offered varying standards for approving the rejection of an executory contract. Under the Bankruptcy Act of 1898, case law denied approval of the rejection of an executory contract unless it was "onerous" or "burdensome" to the estate of the debtor. *See generally,* Silverstein, *Rejection of Executory Contracts,* 31 U.Chi.L.Rev. 467, 468–72 (1964). Such a standard, however, appears to be presently disfavored and not required under the Bankruptcy Code. 2 *Collier on Bankruptcy,* § 365.03 at 365–18 (15th Ed., 1982); *See also Control Data Corp. v. Zelman,* 602 F.2d 38, 42–43 (2nd Cir.1979) (*In re Minges* ).

Many courts have utilized a "business judgment" test in deciding whether to approve rejection of an executory contract. *See e.g., Borman's Inc. v. Allied Supermarkets, Inc.,* 706 F.2d 187, 189 (6th Cir. 1983); *Matter of Tilco,* 558 F.2d 1369, 1372 (10th Cir.1977); *In re Chi-Feng Huang,* 23 B.R. 798, 800 (Bkrtcy. 9th Cir.1982); *In re Richmond Metal Finishers, Inc.,* 34 B.R. 521 (Bkrtcy.E.D.Va.1983). Under the "business judgment" test, the court must determine rejection would result in greater benefit for the debtor's general unsecured creditors. *In re Chi-Feng Huang,* 23 B.R. 798, 801 (Bkrtcy. 9th Cir.1982). The court may withhold approval where the party whose contract stands to be rejected will likely be damaged disproportionately to any potential benefit to be derived by the general unsecured creditors. *In re Chi-Feng Huang,* 23 B.R. at 801.

A third test, while not clearly expressed, merely involves a balancing of equities. In the context of collective bargaining agreements, this balancing test is clearly the appropriate standard. *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). The use of the balancing test, however, is not strictly limited to the collective bargaining situation, as noted by other bankruptcy courts. *See e.g., Matter of Smith Jones, Inc.,* 26 B.R. 289 (Bkrtcy.Minn.1982); *In re Meehan,* 46 B.R. 96 (Bkrtcy.E.D.N.Y.1985).

Since the bankruptcy court is a court of equity, this court believes that it is appropriate to always consider the equities of the situation and measure the relative effects of rejection before granting approval. Even in the application of the so-called "business judgment" test, other courts have recognized that the relative equities must come into play. *See In re Chi-Feng Huang,* 23 B.R. 798, 801 (9th Cir.1982). (citing *Control Data,* 602 F.2d at 43). The balancing of the equities is especially necessary where, in a case like the instant one, one Chapter 11 debtor formally requests rejection of an executory contract and another Chapter 11 debtor effectively seeks assumption.

In the instant case, this court need not choose between the "business judgment" test or the equity-balancing test for the result under either test is the same after considering the equities: this court cannot approve Polychem's rejection. Polychem wants to reject the contract so that it need not be bound by the covenant not to compete. This covenant expires after the 1986 marketing season. Polychem wishes to expand its business services, apparently into the recreational vehicle antifreeze market.

On its part, Polychem has offered no evidence to show that such an expansion will be profitable and benefit its general unsecured creditors. Without any such proof, this court cannot conclude that enforcing the covenant not to compete will be a detriment to the general unsecured creditors or that Polychem will suffer irreparable harm. Moreover, the evidence shows that if Polychem is allowed to reject the executory contract and its restrictive covenant, the general unsecured creditors are likely to suffer.

As part of the manufacturing agreement, Movidyn submitted to Polychem valuable and confidential information regarding the

manufacturing process of the antifreeze and customer lists. If Polychem ventures into the recreational vehicle antifreeze market, lawsuits involving misappropriation of trade information appear to be a hauntingly real spectre which will prove a financial drain regardless of the outcome. In addition, this court recognizes that the proposed expansion of Polychem's services could very well mortally wound Movidyn with speculative benefit to Polychem.

Furthermore, Polychem's requested rejection does not constitute rescission of the contract. Rejection of the contract constitutes a breach and the injured party is entitled to assert a claim for damages. *In re Murphy*, 694 F.2d 172 (8th Cir.1982). In the instant case, such damages might prove substantial which would not benefit the other general unsecured creditors or Polychem.

Allowing Polychem to reject this contract with the information before this court makes no business or equitable sense. Therefore, this court denies Polychem's motion to reject an executory contract. The attorney for United States Movidyn is to prepare a draft order in accordance with this opinion within five (5) days.

IT IS SO ORDERED.