**In re SUN CITY INVESTMENTS, INC., Debtor.**

**Bankruptcy No. 86–187–BKC–6P1.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Aug. 9, 1988.

Morton Kosto, Orlando, Fla., for debtor.

Richard A. Zeller, Tampa, Fla., for Zentmeyers.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

### INTRODUCTION

This case is before the Court upon debtor's motion to reject an executory contract with Frank and Neil Zentmeyer pursuant to 11 U.S.C. § 365(a). The executory contract concerns an Asset Purchase Agreement dated December 13, 1985, in which Sun City Oil Co., Robert Louis Szorcsik, and Sun City Investments, Inc. agreed to sell certain business assets to Frank and Neil Zentmeyer.

The Zentmeyers have filed a written objection to the motion and have suggested that: (1) the contract is no longer exec-utory; (2) that the real party in interest is Central Florida Fuels, Inc.; (3) that the debtor must obtain relief from the automatic stay pursuant to 11 U.S.C. § 362 prior to rejecting the contract with Central Florida Fuels, Inc.; (4) that the rejection will result in substantial forfeiture; and (5) that rejection of the contract will seriously impede the Chapter 11 reorganization of Central Florida Fuels, Inc.

### FACTS

On December 13, 1985, the debtor, Sun City Oil Co., and Robert Louis Szorcsik ("Szorcsik") entered into an Asset Purchase Agreement (the "Agreement") with Frank and Neil Zentmeyer in which they agreed to sell their business to the Zentmeyers for $950,000. The purchase price was payable as follows:

(1) cash in the maximum amount of $100,000 to the extent the accounts receivable have been collected and deposited in the corporate bank account;

(2) $100,000 cash to be paid on June 1, 1986;

(3) delivery of a promissory note in the amount of $150,000 payable over two years with 9 percent interest;

(4) delivery of a promissory note in the amount of $200,000 payable over two years with 9 percent interest; and

(5) replacement by the buyer of a mortgage held by Florida Center Bank (approximate amount = $400,000) on the business premises located at 409 Franklin Street, Ocoee, Florida.

Paragraph 7 of the Asset Purchase Agreement conditioned the closing of the transaction upon the execution of a lease agreement with H.M. Bowness, Inc. (the "Bowness lease"), concerning the business premises located at 409 Franklin Street, Ocoee, Florida. The contract also contained a provision in which the sellers guaranteed a net monthly income of $20,000 to $25,000 for the period running from December 13, 1985, through June 1, 1986.

The transaction was structured so that the closing on the equipment, inventory and receivables took place on December 13,

1985, and on December 16, 1985, and the closing on the realty, consisting of the replacement by the buyer of the mortgage held by Florida Center Bank, was postponed until an unspecified future date.

On December 13, 1985, Frank and Neil Zentmeyer assigned their interest in the contract to Central Florida Fuels, Inc., ("Central Florida") and on December 16, 1985, Central Florida took possession of the premises.

The contract called for the delivery of twenty-five (25) vehicles. Central Florida received only twelve. Thirteen of the vehicles consisting of four tractors, four trailers, four city service tank trucks and one Ford pick-up truck were never delivered.

Central Florida did not make any payments under either of the two promissory notes totalling $350,000, citing the failure to meet the revenue threshold requirement under the Agreement and default as to the thirteen vehicles.

In an endeavor to replace the Florida Center Bank mortgage, Frank Zentmeyer was successful in obtaining three loan commitments from financial institutions. They were a letter of intent to loan from Able Mortgage Company dated January 15, 1986, a commitment from Atlantic Bank dated February 10, 1986, and a commitment dated February 14, 1986, from Florida Center Bank. Zentmeyer was unable to complete the closing of this transaction due to Szorcsik's insistence that the money be paid to him directly and he in turn would pay off the outstanding mortgage.

Due to several large tax assessments by the State of Florida Department of Revenue, debtor, Sun City Investments, Inc., filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 29, 1986. On April 8, 1986, it filed this motion to reject the Asset Purchase Agreement.

On May 14, 1986, Central Florida Fuels, Inc., filed a Chapter 11 petition in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (Case No. 86–1935–BKC–8P1). It also filed a motion to reject the portion of the Asset Purchase Agreement which it claims to be executory (i.e. the obligation to substitute the Florida Center Bank mortgage), a motion to assume the remainder of that Agreement and a separate motion to assume the Bowness lease. Judge Paskay of the Tampa Division transferred the case to the Orlando Division for purposes of consolidating the hearings on those motions with the related motions in this case.

H.M. Bowness, Inc. ("Bowness"), is a company owned and controlled by Robert L. Szorcsik and is the lessor of the business premises occupied by Central Florida Fuels. It too filed a Chapter 11 petition in Orlando on December 12, 1986 (Case No. 86–2772–6P1) and has moved to reject both the December 13, 1985, unexpired lease and the Asset Purchase Agreement with Central Florida Fuels. These motions were consolidated for hearing with the present motion but will be dealt with in a separate opinion. 89 B.R. 238.

## ISSUES

The Court is asked to decide whether the debtor should be permitted to reject an executory contract with Neil and Frank Zentmeyer regarding the sale of debtor's business. The debtor is in effect seeking to rescind the entire contract, including that portion involving the Bowness lease, while Central Florida Fuels and the Zentmeyers insist that the contract is no longer executory and that the Bowness lease should not be included as part of the Asset Purchase Agreement. The Zentmeyers also contend that rejection of the executory contract serves no legitimate business purpose and will not benefit the estate.

Initially, the Court must decide whether the Asset Purchase Agreement is executory in nature. Secondly, the Court must resolve whether the Asset Purchase Agreement is divisible and subject to rejection in whole or in part. Finally, the Court must determine whether the debtor is entitled to reject this particular contract as a matter of law.

## DISCUSSION

Section 365(a) of the Bankruptcy Code provides, in relevant part, that "the trust-

ee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." In Chapter 11 cases, the debtor-in-possession succeeds to this power pursuant to § 1107(a).

The authority to reject certain contracts is fundamental to the bankruptcy system and provides a mechanism through which severe financial burdens may be lifted while the debtor attempts reorganization. *See, e.g., In re Jolly,* 574 F.2d 349, 350 (6th Cir.1978). Should a party be injured by the rejection, it is permitted to file a claim for damages occasioned by the breach under 11 U.S.C. § 502(g).

Although there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 347 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303. The lack of clarity in the statute was intentional as Congress believed the "general meaning is well understood, and any succinct statutory language risks an unintended omission or inclusion." H.R.Doc. No. 93–137, 93rd Cong., 1st Sess. 199 (Part I) (1973) (Report of Commission on Bankruptcy Laws).

This omission has caused many courts to struggle with the proper interpretation of the term. For instance, many courts consider Professor Countryman's pre-Code definition of executory contract to be the proper construction of the term. It describes executory contracts as "contract[s] under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing performance of the other." Countryman, *Executory Contracts in Bankruptcy,* Part I, 57 Minn.L.Rev. 439, 460 (1973). *Lubrizol Enterprises v. Richmond Metal Finishers,* 756 F.2d 1043, 1045–46 (4th Cir. 1985); *In re Newcomb,* 744 F.2d 621, 624 (8th Cir.1984); and *In re Coshise College Park, Inc.,* 703 F.2d 1339, 1348 (9th Cir. 1983).

Other courts find this definition too narrow. For instance, in *In re Hall,* 11 B.C.D. 2d 1365 (Bkrptcy.E.D.Pa.1985), the Court rejected Countryman's definition and concluded that the better definition of executory contract is one "which requires substantial performance by *either* party to the agreement other than the payment of money...." *Id.* at 1367. *See also, In re Norquist,* 43 B.R. 224, 228 (Bkrptcy.E.D.Wash. 1984).

Regardless of which definition is used, Central Florida Fuels, Inc., as assignee of Frank and Neil Zentmeyer's obligations under the Asset Purchase Agreement, is still required to complete the transaction by obtaining a substitute mortgage on the business premises located at 409 Franklin Street, Ocoee, Florida. Similarly, the debtor (or Bowness) is obligated to deliver certain vehicles to Central Florida Fuels pursuant to the contract and to convey title to the real estate. As these obligations have yet to be performed, the Court concludes that this contract remains executory.

The debtor has suggested that the Bowness lease ought to be included within the scope of the present motion. The Court does not agree. While it may very well be that the parties contemplated the execution of the Bowness lease prior to entry into the Asset Purchase Agreement, the Court finds that it is a separate contract between unrelated parties and is not subject to rejection by this debtor. Instead, the contract is subject to assumption/rejection only by either H.M. Bowness, Inc. or Central Florida Fuels, Inc., they themselves being Chapter 11 debtors.[1]

Ordinarily, the decision to assume or reject an executory contract is left entirely to the debtor. Upon proper motion, the Court should give perfunctory approval of the decision subject only to review under the business judgment rule. This test sim-

---

1. Indeed, H.M. Bowness, Inc., has moved to reject the unexpired lease with Central Florida Fuels, Inc., while Central Florida Fuels, Inc., on the other hand, has moved to assume the lease with H.M. Bowness, Inc.

ply requires a showing by the Trustee or debtor-in-possession that rejection of the contract will likely benefit the estate. *See, e.g., In re Bildisco*, 682 F.2d 72, 79 (3d Cir.1982), *aff'd sub nom. N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); *Johnson v. Fairco Corp.*, 61 B.R. 317, 320 (N.D.Ill. 1986); *In re W. & L. Associates, Inc.*, 71 B.R. 962, 16 C.B.C.2d 834, 839 (Bkrptcy.E. D.Pa.1987).

Here, however, the debtor has failed to sustain even this lesser burden. The debtor has failed to produce any credible evidence that rejection would benefit the estate or result in a successful reorganization. Instead, the rejection serves merely to create a new burden to the estate to the detriment of other creditors.

Rejection of the contract in this instant will result in Central Florida Fuels having a large claim against the estate pursuant to § 502(g). Frank Zentmeyer has testified that rejection of the Asset Purchase Agreement and accompanying lease would doom Central Florida Fuel's prospects for reorganization. As that business routinely generates profits in the hundreds of thousands of dollars, Central Florida's damage claim against the estate could be quite large. The Court concludes therefore that rejection is not in the best interest of the estate.

To rebut such a conclusion, the debtor contends that rejection is necessary to complete a successful reorganization. The confirmation hearing is yet to be held. However, the Court is inclined to believe that prospects for a successful reorganization in this case may be bleak. Debtor has all but ceased business operations and has not demonstrated the ability to successfully re-establish itself as a viable company. In addition, Mr. Szorcsik, debtor's president, is involved in criminal proceedings and may face incarceration which could prohibit him from running the company.

Central Florida Fuels and the Zentmeyers have asked the Court to weigh the impact rejection would have on their business. However, the effect of the rejection on the innocent third-party or buyer is not an appropriate factor for the Court to con-

sider. *See, In re Chi–Feng Huang*, 23 B.R. 798, 800 (9th Cir.Bkrptcy.App.1982). Instead, the Bankruptcy Code has a remedy for ill-effects rejection would have on the injured party by permitting the filing of a claim for damages under § 502(g).

Some Courts, however, feel compelled to apply a balancing of the equities test in the "dual debtor" situation. For instance, in *In re Midwest Polychem, Ltd.*, 61 B.R. 559 (Bkrptcy.N.D.Ill.1986), the Court reasoned:

> Since the bankruptcy court is a court of equity, this court believes that it is appropriate to always consider the equities of the situation and measure the relative effects of rejection before granting approval. Even in the application of the so-called "business judgment" test, other courts have recognized that the relative equities must come into play. See *In re Chi–Feng Hang*, 23 B.R. 798, 801 (9th Cir.1982). (citing *Control Data [Corp. v. Zelman]* 602 F.2d [38] at 43). The balancing of the equities is especially necessary where, in a case like the instant one, one Chapter 11 debtor formally requests rejection of an executory contract and another Chapter 11 debtor effectively seeks assumption.

61 B.R. at 562.

Without deciding in favor of the balancing of the equities test, the Court notes that its application would still result in a ruling in favor of Central Florida. Specifically, the evidence indicates that if debtor's motion were granted, the general unsecured creditors would suffer a substantial loss due to Central Florida's inevitable claim. Furthermore, approval of the motion would result in the termination of an otherwise successful business (Central Florida's) and the loss of twelve jobs while approval of the motion would produce no significant benefit to anyone. The Court concludes, therefore, that the equities weigh in favor of denying the motion.

As for Zentmeyer's remaining arguments, the Court finds that the debtor need not move for relief from the stay pursuant to § 362 prior to filing a motion to reject an executory contract with Central Florida Fuels (a Chapter 11 debtor in Tampa). Sec-

ondly, although Central Florida Fuels is the real party in interest to this action, its interests were adequately represented at the hearing by Frank and Neil Zentmeyer and their counsel. Debtor will be enjoined from protracting this litigation further by filing a motion for rejection of the lease agreement with Central Florida Fuels based on this technicality.

Nothing in this Opinion should be interpreted to suggest that Central Florida is relieved of its obligations to comply with the terms of the Asset Purchase Agreement.

The Court will enter a separate order in accordance with this Opinion.