**In re Andres HERNANDEZ and Dorothy Hernandez, Debtors.**

No. 99–01192–YUM–EWH.

United States Bankruptcy Court, D. Arizona.

Dec. 23, 2002.

John A. Weil, Esq., Yuma, AZ, for Debtors.

Riley C. Walter, Esq., Gregory S. Powell, Esq. Fresno, CA, Jeffery R. Gilles, Esq., Paul W. Moncrief, Esq., Lombardo & Gilles, PLC, Salinas, CA, for Great Northern Equipment Company.

## MEMORANDUM DECISION

EILEEN W. HOLLOWELL,
Bankruptcy Judge.

In this case, the court must determine whether it must issue an order directing

the Debtors to reject an unassumable executory contract pursuant to 11 U.S.C. § 365(d)(2) upon the request of the non-debtor party to the contract. For the reasons set forth below, the court holds that: (1) the Debtors are not required to reject the contract, but may instead elect not to address the contract in their Chapter 11 plan; (2) the contract may ride-through the bankruptcy; and (3) the automatic stay is lifted with respect to the contract.

### PROCEDURAL HISTORY

On September 9, 2002, the court issued a Memorandum Decision holding that the Debtors, Andres and Dorothy Hernandez could not assume a License Agreement dated January 17, 1997 (the Agreement). The Agreement granted Andres Hernandez, Steve Wolfe and Andrew Smith "exclusive" licenses to use a patented technology which extends the shelf life of lettuce.[1] The September 9, 2002, decision sets forth, the factual history surrounding the execution of the Agreement and the court will not repeat that history in this decision. However, a brief review of the proceedings in this case is warranted:

In November of 1999, involuntary petitions under Chapter 11 were filed against the Debtors, Andres and Dorothy Hernandez. Orders for relief in both cases were entered in January of 2000, and the cases were consolidated shortly thereafter. In February of 2001, the Debtors filed a Plan of Reorganization which provided for the assumption of the Agreement. Both the Monterey Leaf Creditors as well as the licensor under the Agreement, Great Northern Equipment Company (Great Northern), opposed confirmation of the Debtors' Plan.[2]

In their Objections to the Debtors' Plan, the Objectors contended that the Ninth Circuit's holding in *In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir.1999) bars the Debtors from assuming the Agreement. In *Catapult*, a case involving a non-exclusive software license, the Ninth Circuit held that a debtor cannot assume a contract which falls under the provisions of 11 U.S.C. § 365(c)(1) unless it can be demonstrated that the contract could be assigned to a hypothetical third party, even if the debtor has no intention of assigning the contract.[3] The Objectors further asserted that, if the Agreement could not be assumed, it must be deemed rejected.

At the June 14, 2002 hearing on Plan Confirmation, the court requested additional briefing from the parties on the applicability of *Catapult* to the Agreement, which by its terms purported to grant Hernandez an exclusive license. In their brief, the Debtors presented several arguments in support of their effort to assume the Agreement. The Debtors also raised an alternative argument in support of confirmation of their Plan. According to the

---

1. Steven Wolfe and his related entities are collectively referred to as the Monterey Leaf Creditors.

2. Great Northern and the Monterey Leaf Creditors are hereinafter collectively referred to in this decision as the Objectors.

3. 11 U.S.C. § 365(c)(1) provides as follows:

"(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if–

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment."

Debtors, even if assumption of the Agreement was not a viable option, they should not automatically be forced to reject the Agreement. The Debtors argued that in addition to the affirmative acts of assumption and rejection, § 365 permits a debtor to allow an executory contract to "ride through" a Chapter 11 bankruptcy case.

In its September 9, 2002 Memorandum Decision, the court held that the Debtors could not assume the Agreement. The court found that: (1) even though the license granted to Hernandez was purportedly exclusive rather than non-exclusive, the Agreement nevertheless fell within the provisions of § 365(c)(1) and the requirements for assumption set forth in *Catapult;* and (2) the terms of the Agreement did not permit assignment to a hypothetical third party absent the consent of the licensor. Consequently, the court ruled that the Agreement fails the "hypothetical test," and as such, could not be assumed by the Debtors.[4] However, the court deferred ruling on the "ride-through" issue raised by the Debtors until after the parties had an opportunity to submit supplemental briefs on that issue.

On October 16, 2002, Great Northern filed a Motion to Compel Rejection of the Agreement pursuant to § 365(d)(2), and a Motion to Lift the Stay pursuant to 11 U.S.C. § 362 to permit it to terminate the Agreement. The Monterey Leaf Creditors joined Great Northern in both of these Motions. The issues raised in the motions to compel rejection and to lift stay are directly affected by the court's determination of the "ride-through" issue, and as such, those motions are addressed by the court in this Memorandum Decision. Both sides have filed their briefs and the matter is now ready for decision.

## *JURISDICTION*

The court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and (b).

## *DISCUSSION*

### I. Introduction

The facts of this case create an unusual problem: If the court determines that the Agreement must be rejected, then the Debtors will have forfeited their rights under the Agreement regardless of whether the Debtors actually committed a breach. *See* § 365(g)(providing that rejection of an executory contract constitutes a breach of that contract as of the date immediately preceding the filing). In essence, the Debtors will have forfeited their rights under the Agreement simply by having consented to the entry of an order for relief after an involuntary bankruptcy case was initiated against them.[5] On the other hand, had the Debtors not been forced into bankruptcy, their rights under the Agreement could only be terminated upon a demonstration of a material breach. This case, therefore, presents the unusual situation where a debtor has fewer rights

---

4. For an analysis and critique of the problems presented by application of the hypothetical test, *See* Daniel J. Bussel & Edward A. Friedler, *The Limits on Assuming and Assigning Executory Contracts,* 74 Am. Bankr.L.J. 321 (Summer 2000).

5. On January 14, 2000, the Debtors entered an agreement with the petitioning creditors to allow entry of an order for relief with the understanding that the case would be dismissed 120 days after a settlement was reached. (See Debtors' Answer to Inv. Pet. at Dkt. # 8). At that time, the Objectors were not actively involved in the case. The Monterey Leaf Creditors filed their first pleading in the case, an Objection to Debtors' Disclosure Statement, on March 12, 2001. (See Dkt. # 47). Great Northern filed its first pleading in this case, an Objection to Debtors' Plan, on October 16, 2001. (See Dkt. # 87).

*in bankruptcy* than outside of bankruptcy. The court finds such a result to be inconsistent with the reorganization principles of Chapter 11. At the same time, the rights afforded under Chapter 11 to non-debtor parties to executory contracts are entitled to protection. With these concerns in mind, the court now addresses the "ride-through" theory raised by the Debtors.

## II. The Ride–Through Doctrine

The treatment of executory contracts by a Chapter 11 debtor is governed by 11 U.S.C. §§ 1123 and 365. § 1123(b)(2) provides that a Chapter 11 plan may "subject to 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under this section." In turn, § 365(a) provides that the debtor "subject to court approval, may assume or reject any executory contract."

■ The "ride-through" doctrine advocated by the Debtors is purely a creature of case law; the doctrine is not provided for in §§ 1123 or 365, or anywhere else in the Bankruptcy Code. Simply stated, the ride through doctrine provides that executory contracts that are neither affirmatively assumed or rejected by the debtor under § 365, pass through the bankruptcy unaffected. *See e.g., In re Polysat, Inc.,* 152 B.R. 886, 890 (Bankr.E.D.Pa.1993)("In a chapter 11 case, where a debtor has

failed to expressly assume or reject a[n] ... executory contract, that ... contract will be unaffected by the bankruptcy filing"); *In re Day,* 208 B.R. 358, 368 (Bankr.E.D.Pa.1997)(holding that "[i]t has long been the rule in bankruptcy that an executory contract that is neither assumed nor rejected continues in place between the parties, passing through the bankruptcy to the reorganized debtor").

Ride-through finds its origin in the pre-Bankruptcy Code case of *Consolidated Gas, Elec. Light and Power Co. of Baltimore v. United Railways and Elec. Co. of Baltimore,* 85 F.2d 799 (4th Cir.1936). In that case, the Fourth Circuit held that an "executory contract remains in force until rejected, and unless rejected it passes through with other property of debtor to reorganized corporation." *Id.* at 805.[6] Since *Consolidated Gas,* the ride-through doctrine, which has also been described as the "pass through" or "continuing contract" theory, has been applied by several Circuits Courts of Appeal. *See e.g., In re O'Connor,* 258 F.3d 392 (5th Cir.2001); *Boston Post Road L.P. v. FDIC,* 21 F.3d 477, 484 (2d.Cir.1994) *cert. den.* 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995); *In re Greystone III Joint Venture,* 995 F.2d 1274 (5th Cir.1991); *In re Public Service Co. of New Hampshire,* 884 F.2d 11 (1st Cir.1989). The doctrine has also been recognized by commentators in law journals,[7] and treatises including Collier:

---

**6.** Although *Consolidated Gas* was a pre-Code case, the legal precepts developed therein remain applicable today because theories developed under the Bankruptcy Act apply to cases decided under the Code. *See In re Bonner Mall Partnership,* 2 F.3d 899, 913 (9th Cir. 1993) ("Where the text of the Code does not unambiguously abrogate pre-Code practice, courts should presume that Congress intended it to continue unless the legislative history dictates a contrary result"); *In re Polysat, Inc.,* 152 B.R. 886, 890 (Bankr.E.D.Pa. 1993)("Where Congress has not evidenced an

intent to change established pre-Code law, courts should interpret the Code as continuing that legal principle").

**7.** *See e.g.,* Bussel, *supra* note 4, at 330 f.48; *see also* David G. Epstein & Steve H. Nickles, *The National Bankruptcy Review Commission's § 365 Recommendations and the "Larger Conceptual Issues",* 102 Dick. L.Rev. 679, 689 (Summer 1998); Mark R. Campbell & Robert C. Haste, *Executory Contracts: Retention Without Assumption in Chapter 11—*

"If the debtor fails to either assume or reject the contract by separate order or in its plan, it appears that the contract would continue in existence .... if the debtor continues operating, arguably the contract passes through the bankruptcy and remains a liability of the reorganized entity." 3 Collier on Bankruptcy, § 365.02[2][d] (15th Ed. Rev.1999); *see also* 7 Collier on Bankruptcy, § 1123.02[2] (15th Ed. Rev. 1999).

Ride-through has also been recognized by the United States Supreme Court in dicta, and has been alluded to by the Ninth Circuit as well. In his concurring and dissenting opinion in *National Labor Relations Board v. Bildisco*, 465 U.S. 513, 546 n. 12, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), Justice Brennan wrote:

> In the unlikely event that the contract is neither accepted nor rejected, it will "ride through" the bankruptcy proceeding and be binding on the debtor even after a discharge is granted. The non-debtor party's claim will therefore survive the bankruptcy proceeding.

(Citations omitted). In *Smith v. Hill*, 317 F.2d 539, 543 n. 6 (9th Cir.1963), the Ninth Circuit discussed the implications of a debtor's failure to affirmatively assume an executory contract under § 365(c):

> In Chapter XI proceedings failure to assume affirmatively an executory contract does not result at any time in rejection of the contract. Whether the debtor is in possession, or whether there is a receiver or trustee, the contract can be rejected only by affirmative action. Unless so rejected, the contract continues in effect.

(Citations omitted). While the *Smith* court does not specifically mention ride-through, the holding has been cited by other courts as support for the doctrine.

*See e.g., In re Cajun Elec. Power Co-op., Inc.,* 230 B.R. 715, 734 (Bankr.M.D.La.1999)(citing *Smith* for the proposition that a lease or executory contract that is neither rejected nor assumed passes through the bankruptcy to the reorganized debtor).

Ride-through is thus a well-recognized and established legal doctrine. However, before the court determines if the doctrine should be applied in this case, it is useful to clarify exactly what the doctrine is and is not.

■ First and foremost, ride-through is not an option for the treatment of an executory contract under § 365. As previously stated, § 365 presents the debtor with two express options—assumption or rejection. Ride-through is not an affirmative choice available to the debtor under § 365. Therefore, if an executory contract is addressed in a Chapter 11 plan pursuant to § 1123(b)(2), it must be either assumed or rejected. The debtor may not treat an executory contract in a Chapter 11 plan and at the same time, effect a ride-through of that contract—these are inconsistent proposals.

■ In addition, ride-through is not a de facto assumption. In their brief, the Objectors argue that the ride-through doctrine affords the Debtors all of the benefits of assumption, and in effect, allows the Debtors to assume an unassumable contract. This assertion is erroneous. A contract that is not assumed is not entitled to the benefits afforded by 11 U.S.C. § 365 such as insulation from *ipso facto* provisions or the right to cure arrearages within a reasonable period of time notwithstanding what the payment terms of the contract may be. Unless and until an executory contract is assumed, the debtor is not afforded any of the rights granted

under § 365(e). The ride-through theory allows the debtor to retain the benefits as well as the burdens of the *contract,* not the benefits of *assumption.*[8] Consequently, ride-through is not the equivalent of formal assumption under § 365. For example, in *In re O'Connor,* 258 F.3d 392, 405 (5th Cir.2001) the Fifth Circuit held that an *unassumable* partnership could ride through the bankruptcy proceedings unaffected:

> The parties did *not* cite, nor did we find, any cases applying the pass-through theory when, under § 365(c)(1), the executory contract was *not* assumable. But, we see *no* reason why the theory should *not* apply. This is because there is *no* difference between a contract that, under § 365(c)(1), *cannot* be assumed, and one which is neither assumed nor rejected. Each is simply *unaffected* by the bankruptcy proceedings.

(Emphasis in original).

■ The ride-through doctrine is simply the traditional manner in which the courts deal with executory contracts, that for some reason were not assumed or rejected pursuant to § 365 prior to or at confirmation. As the Objectors point out, the traditional application of the doctrine by the courts has been "backward-looking." When an executory contract is not addressed by the debtor in a Chapter 11 plan or by separate motion, the doctrine applies and the contract becomes binding on the reorganized debtor. In this manner, the contract is unaffected by the bankruptcy and the interests of both parties to the contract are preserved.

In this case, the Debtors originally raised ride-through as an auxiliary, or "fallback" position, for their assumption argument. According to the Debtors, if the Agreement cannot be assumed, it need not be rejected because the court can allow it to ride-through the bankruptcy. Now that the court has ruled against the Debtors on their assumption argument, the ride-through doctrine represents the Debtors's only possibility for confirmation of

---

**8.** The logical result of a ride-through contract is that claims which arise from the breach of such a contract cannot be discharged through a Chapter 11 plan. Accordingly the Debtors may not seek to discharge any of Hernandez' obligations under the Agreement through their amended plan:

> [I]n actual practice it often happens that parties to contracts and leases (including leases "deemed rejected" under subsections (4) and (5)) simply continue to perform thereunder as though the bankruptcy had not happened. This has been addressed by the courts, which have uniformly held that when a debtor continues to derive benefits under the contract or lease, *the debtor will also be burdened with the obligations,* and the lease or other contract will be deemed to "pass through" or "ride through" the bankruptcy unaffected by it.

*In re Texaco Inc.,* 254 B.R. 536, 557 (Bankr.S.D.N.Y.2000)(emphasis added). In this regard, some commentators have expressed the concern that the case law on the ride-through doctrine is inconsistent with the broad definition of "claim" established under 11 U.S.C. § 101(5):

> We believe these cases are inconsistent with the Bankruptcy Code's expanded definition of claim. A party to a lease or executory contract with a Chapter 11 debtor has a section 101(5) claim even before the lease or contract is assumed or rejected. Any such section 101(5) claim would be extinguished when the Chapter 11 debtor's plan was confirmed and so would not ride through the bankruptcy.

*See* Epstein, *supra* note 7, at 690; *but see In re Cochise College Park, Inc.,* 703 F.2d 1339, 1352 (9th Cir.1983)("Until rejection, however, the executory contract continues in effect and the non-bankrupt party to the executory contract is not a creditor with a provable claim against the bankrupt estate"); Even if § 101(5) is broad enough to include an executory contract that has not been breached, the Debtors may address this issue by placing a provision in the amended Plan that excludes from discharge Hernandez' obligations under the Agreement.

their Plan. However, the Debtors' current Plan still provides for the *assumption* of the Agreement. As previously stated, an executory contract may not be addressed in a Chapter 11 Plan and simultaneously ride through the bankruptcy unaffected. In their supplemental brief on ride-through, the Debtors essentially argue that the court should allow them to amend their Plan to remove all references to the assumption of the Agreement. The Debtors assert that once the Plan no longer provides for the assumption of the Agreement, it can be confirmed, and the Agreement would then ride through the bankruptcy unaffected pursuant to cases such as *O'Connor* and *Polysat.*

The Objectors argue that the ride-through doctrine is inapplicable under the facts of the present case. According to the Objectors, the ride-through theory is available only as a post-confirmation tool for dealing with problems arising out of a debtor's failure to address an executory contract before or at plan confirmation. The Objectors assert that all of the ride-through cases cited by the Debtors share a common distinction from the facts of this case: in all such cases, the non-debtor party failed to object to the plan or move the court to compel assumption or rejec-

tion of the contract prior to confirmation. In this case, unlike the cases cited by the Debtors, the Objectors have opposed confirmation of the Debtors' plan by filing numerous objections to confirmation as well as motions to compel rejection of the Agreement pursuant to § 365. This is not a case in which the parties have overlooked the existence of an executory contract or simply continued to perform as if the bankruptcy had never occurred—to the contrary, the Agreement has been the focus of months of arduous litigation. Now, the Objectors have requested relief from the court in the form of an order deeming the Agreement rejected, and lifting the § 362 to permit Great Northern to terminate the Debtors' rights under the Agreement.[9]

■ Indeed, the court has not found a case in which an executory contract has been allowed to pass through the bankruptcy in the face of an objection by the non-debtor party. On the other hand, the court has not found a case in which a debtor has sought to effect a ride-through of an executory contract by intentionally failing to address it,[10] and has been prevented from doing so.[11] Given its histori-

9. The Objectors also argue that because there has been litigation in this case regarding the Agreement it cannot ride through the Debtors' case "unaffected." The court rejects such an interpretation. Almost every executory contract to which a debtor is a party is affected by the filing of a bankruptcy case because of the imposition of the § 362 automatic stay. Even if the debtor and the non-debtor party continue to perform as they did prior to the filing of the case, the non-debtor party may be impacted in some manner by the debtor's filing for bankruptcy. The use of the word "unaffected" in the cases which have addressed the ride-through doctrine relates to the parties' rights *under the contract,* not to whether there has been some impact on the parties as a result of the filing of a bankruptcy case.

10. In fact, there is some support for the application of ride-through where an executory contract is intentionally ignored by the debtor. *See* Epstein, *supra* note 7, at 690–91 (supporting the practice of ride-through in Chapter 11 and quoting *Reforming the Bankruptcy Code: National Bankruptcy Conference Code Review Project* 144–45 (rev. ed. 1997): "The debtor and the other party expect to perform these contracts without formality. In other words, the debtor's failure to schedule such contracts is not accidental or inadvertent"); *see also* Campbell, *supra* note 7 at 33–34.

11. In this regard, the cases cited by the Objectors are likewise inapposite.

cal acceptance and general application by the courts, the court believes that the doctrine applies any time a debtor fails to address an executory contract, whether that failure is inadvertent or intentional. Consequently, the court will apply the doctrine in this case if it is equitable to do so. Thus, the proper inquiry at this time is not whether the Debtors may choose to have the Agreement ride through the bankruptcy, or whether the court should "allow" the Agreement to ride through. Rather, the question that must be decided now is whether or not the Debtors are required to address the Agreement in their Chapter 11 Plan—i.e., are the Debtors required to reject the Agreement because the Objectors have filed a motion under § 365(d)(2) seeking that relief?

## III. Assumption / Rejection

■ In their Motion to Compel Rejection, the Objectors petition the court for a determination that the Agreement is deemed rejected under 11 U.S.C. § 365. According to the Objectors, § 365(d)(2) *requires* a debtor to assume or reject an executory contract upon the request of a party-at-interest. The Objectors argue that these two alternatives are exclusive. Because the Debtors cannot assume the Agreement, the Debtors are bound to reject it sooner or later, and for this reason, the Objectors contend that the court should order the Agreement deemed rejected immediately.

The Debtors respond by asserting that the Bankruptcy Code does not require them to choose either to assume or reject the Agreement. According to the Debtors, both §§ 365 and 1123 are discretionary provisions permitting a debtor to assume or reject an executory contract. Therefore, the Debtors are not bound to reject the Agreement, but instead, they may elect not to address it in their Plan.

■ When interpreting the Bankruptcy Code, the court must begin with the statutory language. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *In re Catapult*, 165 F.3d 747, 750 (9th Cir. 1999). In the context of interpreting the Code, the plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *In re Myrvang*, 232 F.3d 1116, 1124 (9th Cir.2000). In addition, § 365(d)(2) must be interpreted in the context of the broad purposes of the entire Code. *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir.1982). § 365(d)(2) provides:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

§ 365(d)(2) provides that a debtor *may* assume or reject an executory contract. The use of the term *may* (as opposed to the term *shall*) indicates the permissive nature of the section. Therefore, according to the plain meaning of § 365(d)(2), a debtor may *or may not* assume or reject an executory contract.

This interpretation of § 365(d)(2) is consistent with other operative Code provisions. § 365(d)(4) provides that "[n]otwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired

lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief ... then such lease is deemed rejected." Because § 365(d)(4) provides for the automatic rejection of commercial leases that are not assumed, a debtor is in essence forced to either assume or reject the lease—electing not to address the lease is not an option. Presumably, if Congress wanted to make the choice between assumption and rejection of all executory contracts mandatory, it could have made a provision similar to § 365(d)(4) applicable to such contracts. *See e.g., In re Griffith,* 206 F.3d 1389, 1394 (11th Cir.2000)("where Congress knows how to say something but chooses not to, its silence is controlling").

■■■ In addition, § 1123(b)(2) provides that a Chapter 11 plan *"may* subject to 365 of this title, provide for the assumption, rejection, or assignment of any executory contract." (Emphasis added). As with § 365(d)(2), the language of § 1123(b)(2) is permissive in nature, and the debtor may choose not to address an executory contract under a Chapter 11 plan. Thus, the treatment of executory contracts inside of a Chapter 11 plan is optional. *Texaco,* 254 B.R. at 556 (holding that under § 1123(b)(2), "the right to assume or reject an executory contract is optional"). When read in conjunction with one another, § 1123 and § 365 establish a statutory framework in which the debtor is free to either assume or reject an executory contract through a plan, or elect not to address the contract within his plan and continue performance [12] outside the plan:

> Section 1123(b)(2) is permissive. The plan *may* provide for the assumption or

assignment of an executory contract. On the other hand, the contract may "ride through" the plan as unaffected. 7 Collier on Bankruptcy, § 1123.02[2] (15th Ed. Rev.1999)(emphasis in original); *see also In re Cole,* 189 B.R. 40, 46 (Bankr. S.D.N.Y.1995); *Aetna Casualty & Surety Co. v. Gamel,* 45 B.R. 345, 348 (N.D.N.Y. 1984).

Thus, the Debtors may choose not to address the Agreement in their Plan. Nonetheless, the Objectors contend that even if the Debtors do not voluntarily address the Agreement, the court *must,* upon request of the Objectors, order them to do so. The Objectors argue that under § 365(d)(2), a creditor may petition the court to compel the debtor to either assume or reject an executory contract within a specified time. According to the Objectors, the court must act on such a request, and as such, the court must direct the Debtors to reject the Agreement immediately, as assumption is not an option.

The question of whether the court, upon the request of a non-debtor party, must direct the debtor to either assume or reject an executory contract was addressed by the Second Circuit in *Mauro.* In that case, the Second Circuit held that a bankruptcy court need not direct the debtor to make a decision immediately simply because the other party to the agreement has filed a motion under § 365(d)(2). Rather, the bankruptcy court, in its discretion, sets a reasonable time in which the debtor must decide whether to assume or reject. *See* 681 F.2d at 105 ("[U]nder the new Code, as under the old Act, the trustee or debtor in reorganization is allowed a

---

**12.** Of course, in many instances, the terms of the executory contract may bar continued performance by the debtor of a ride-through contract. Absent the protections of § 365, the non-debtor party may move to enforce an

*ipso-facto* clause, or other insolvency terms, which are routinely included as default provisions in many contracts. *See* Randolph J. Haines, *Time to Eliminate Ipso Facto Clauses,* Norton Bankruptcy Law Adviser (May 2002).

reasonable time to decide whether to assume or reject. ... What constitutes a reasonable time is left to the bankruptcy court's discretion in the light of the circumstances of each case"); *see also In re Enron Corp.*, 279 B.R. 695, 702–03 (Bankr. S.D.N.Y.2002); *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr.D.Del. 2001). Other courts have since determined that, in exercising its discretion, a court has the power to deny a § 365(d)(2) request. *See also Whitcomb & Keller Mortgage Co.*, 715 F.2d 375, 379 (7th Cir. 1983); *In re St. Mary Hospital*, 89 B.R. 503, 513 (Bankr.E.D.Pa.1988).

*Mauro* and its progeny did not address the question of whether the filing of a motion under § 365(d)(2) precludes an executory contract from riding through a Chapter 11 bankruptcy.[13] As previously stated, the court has not found a reported decision that addresses this issue. Therefore, in deciding this question, the court must turn to the statutory language. § 365(d)(2) establishes that the court, upon the request of a non-debtor party to the contract, *may* order the trustee to determine within a specified period of time whether to assume or reject the contract. (Emphasis added). Once again, the operative language of the statute is permissive. According to the statutory language, the court has discretion to determine whether or not to grant the request of the non-debtor party and direct the debtor to act.

■ This interpretation is consistent with the legislative history of § 365(d)(2). The legislative history indicates that the first draft of § 365(d)(2) stated:

In a case under chapter [9 or 11] an executory contract or unexpired lease may be assumed at any time prior to the confirmation of a plan or in the plan, but [the court] upon request of any party to the lease or contract *shall* order the assumption or rejection by the trustee within a specified period of time, not exceeding thirty days, if further delay would result in prejudice to such a party.

Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. 93–137, 93d Cong., 1st Sess., Part II § 4–602(a)(2) (1973) (emphasis added). In its original form, § 365 would have required the court to order the trustee to assume or reject an executory contract within 30 days upon the request of a non-debtor party to the contract. However, in reforming the statute, Congress substituted the word "may" for "shall," and dropped all references to a time limit. Thus, although Congress considered making the court's issuance of such an order mandatory, it instead opted to allow the court latitude to exercise discretion in this area.[14]

13. In fact, in many instances these cases presume that a debtor must either assume or reject an executory contract by the time of confirmation. *See e.g., In re National Gypsum Co.*, 208 F.3d 498, 505 n. 5 (5th Cir. 2000)("The debtor may delay making a decision and simply provide for assumption or rejection in the plan itself"); *St. Mary Hospital*, 89 B.R. at 513 ("Of course, in deciding a § 365(d)(2) motion ... a bankruptcy court is empowered to deny the motion and allow the debtor to *wait until the normal deadline of confirmation to assume or reject the contract*")(emphasis added). However, the court has already determined, pursuant to the plain meaning of the statutory language of § 365(d)(2) that a debtor may elect not to address an executory contract in its plan and continue performance outside the plan. *See supra* at p. 804.

14. This interpretation is also consistent with § 1123. As explained in Collier on Bankruptcy: "However a party to the contract may insist that it either be rejected or fully assumed under the plan if the contract has not already been dealt with separately from the plan."
7 Collier on Bankruptcy § 1123.02[2] (15th Ed. Rev.1999). While the treatise provides

■ Accordingly, under the plain meaning doctrine cited earlier in this decision, the court may, but is not required to issue an order directing the Debtors to reject the Agreement. If the court does not order rejection of the Agreement, the Debtors will presumably amend their plan and the Agreement will ride through the bankruptcy. The court must therefore turn to the question of what standards should be applied in determining whether the circumstances of this case justify permitting the Agreement to ride through. The four part test set out in *Mauro* for determining whether a debtor should be permitted to delay the assumption or rejection decision serves as a useful guide for analyzing when ride through of an executory contract should be permitted. The four factors are: (1) the damage that other party to contracts would suffer, beyond compensation available under the Bankruptcy Code; (2) the importance of the contracts to the debtor's business and reorganization; (3) whether the debtor has had sufficient time to appraise its financial situation and potential value of its assets in formulating a plan; and (4) whether the exclusivity period has terminated.

In applying the *Mauro* factors, the court confronts a difficult balancing task. If the Debtors are permitted to amend their plan to eliminate any treatment of the Agreement, the Objectors will not receive any compensation under the Bankruptcy Code for their damages because, as set forth earlier, the Objectors will not have a claim which can be treated or discharged under an amended plan. The Objectors allege that they have sustained substantial damages as a result of the Debtors' attempts to assume the Agreement. During that time, the automatic stay of § 362 has prevented the Objectors from concluding litigation in state court which they assert would terminate the Debtors' rights under the Agreement. The Objectors did not, however, specifically seek stay relief until October 16, 2002 thus, some of the time delay is arguably the result of their own inaction. At the same time, once the Objectors appeared in the case in 2001 they actively opposed confirmation of the Debtors' plan and assumption of the Agreement.[15]

The court must balance the Objectors' alleged damages against the second prong of the *Mauro* test, which is the importance of the Agreement to the Debtors' potential reorganization. If the court requires the Agreement to be rejected there will be no reorganization because the exclusive funding source for the Debtors' attempted reorganization is the income they will receive by exercising their purported rights under the Agreement. Of course, the Objectors assert that the Debtors forfeited their rights under the Agreement as a result of their alleged breach. However, if the Agreement is deemed rejected all of the Debtors' rights under the Agreement will be automatically cancelled regardless of whether they have breached the Agreement. The court finds therefore, that re-

that a non-debtor party may "insist" that the debtor either assume or reject an executory contract, it is evident that here, the author is concerned with protecting the contractual rights of the non-debtor party: "This type of party has a right to be heard in respect to assumption or rejection of the contract at the time of the confirmation hearing under section 1128 or prior to such date, in order to assure adequate protection of its interests."

*Id.* A contract that rides through the case unaffected remains binding on the debtor, and as such affords the non-debtor party all of the protections available under the original contract.

15. The court also notes that the Objectors and the Debtors agreed to defer confirmation while they attempted to settle their disputes through mediation. (See Dkt. # 93).

quiring the Debtors to reject the Agreement will result in significant harm to the Debtors and their creditors which outweighs the harm caused to the Objectors by the delay of the state court litigation and the cost of litigating confirmation and § 365 issues in this court.[16] Accordingly the court will exercise its discretion and will not issue an order requiring the Debtors to reject the Agreement. Instead the Debtors shall have thirty days to amend their Plan to eliminate the section that provides for the assumption of the Agreement. The Debtors will, of course, face the burden of demonstrating that such an amended plan is confirmable under 11 U.S.C. § 1129.

## IV. Motion to Lift Stay

In their Motion for Relief form the Automatic Stay, the Objectors contend that cause exists as a matter of law to lift the automatic stay in regards to the Agreement under § 362(d)(1). The court agrees. In this case, the court has already determined that the Debtors cannot assume the Agreement, or otherwise treat it in their Plan. Therefore, cause exists to lift the automatic stay and allow the Objectors to enforce whatever rights they may have under applicable non-bankruptcy law.

## V. Plan Confirmation

The Objectors have asserted that allowing the Agreement to ride through the case will accomplish nothing because the Debtors will not be able to confirm their Chapter 11 Plan even if the Agreement is permitted to ride through. In support of this contention, the Objectors present two arguments: First, the Objectors maintain that because the Agreement is unassumable, it is not property of the Bankruptcy Estate, and cannot be used to create value for the creditors. However, even if the Objectors are correct in their assertion that an unassumable contract is not estate property,[17] that does not mean it cannot create value for the creditors. For example, individual Chapter 11 debtors routinely propose plans which are funded from non-estate assets, such as the income derived from services the debtor performs post-petition. See 11 U.S.C. § 541(a)(6). In light of the fact that such Plans are often confirmed, the court does not consider the fact that the Agreement will be treated outside the Plan as an obstacle to confirmation.

Second, the Objectors allege that the Debtors cannot rely on any prospective income from their continued use of the patent license granted to the Debtors under the Agreement to fund an amended plan. In this regard, the Objectors point out that the Agreement is the subject of ongoing state court litigation. According to the Objectors, the Debtors breached the Agreement by entering into a subcontracting arrangement with a third party. The Objectors assert that once the § 362 automatic stay is lifted in this case, the pend-

---

16. The remaining factors under *Mauro* are not particularly relevant to the court's decision regarding whether the Debtors should be required to reject the Agreement. The Debtors have had ample time to appraise their financial situation and exclusivity ran long before the Debtors proposed a plan in February of 2001.

17. There is some divergence within the Ninth Circuit as to whether an unassumable contract is property of the estate. In *In re Qintex*

*Entertainment, Inc.*, 950 F.2d 1492, 1495 (9th Cir.1991), the Ninth Circuit determined that "[a]n executory contract does not become an asset of the estate until it is assumed pursuant to § 365 of the Code." By contrast, the court in *In re Computer Communications, Inc.*, 824 F.2d 725, 728–29 (9th Cir.1987), held that an unassumed and unassumable contract is nevertheless property of the estate and entitled to the protections of the § 362 automatic stay.

ing state court litigation will be able to proceed and Great Northern will eventually terminate the Debtors' rights under the Agreement. The Debtors contend that their subcontracting arrangement complies with the terms of the Agreement and that Great Northern is, itself, in breach of the Agreement.

The litigation that is pending in state court between the Debtors and the Objectors regarding these issues will now be able to proceed to conclusion since this court has lifted the automatic stay with respect to the Agreement. The Debtors claim that they will prevail in that litigation and that there will, therefore, be income available to fund an amended plan. Chapter 11 plans which depend for funding on the outcome of litigation may be confirmable under the right circumstances. *See e.g., In re Applied Safety, Inc.,* 200 B.R. 576, 587 (Bankr.E.D.Pa.1996). Because the amended Plan is not yet before the court, the court cannot determine if this may be such a case. Until that determination is made after both the Debtors and the Objectors have a full opportunity to present their arguments, the court cannot find that permitting the Agreement to ride through the Debtors' bankruptcy case will make it impossible for them to propose a confirmable plan.

### CONCLUSION

The Debtors are not required to reject the Agreement, but instead may file an amended Plan within thirty days which permits the Agreement to ride through the case. However, the § 362 automatic stay is lifted in this case with respect to the Agreement. The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Bankr.R. Proc. 9021. A separate order consistent with the terms

of this Memorandum Decision will be issued this date.