**In re JZ, LLC, Debtors.**

**No. 01–03545–TLM.**

United States Bankruptcy Court,
D. Idaho.

Dec. 21, 2006.

Cyrus J. Roedel, Boise, ID, for Debtors.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Chief Judge.

## INTRODUCTION

This matter comes before the Court nearly four years after JZ, LLC ("Debtor") confirmed its chapter 11 plan, and more than three years after the case was closed. The present dispute flows from post-confirmation state court litigation brought by the reorganized Debtor. Defendants in that action, Diamond Z Trailer, Inc., and two of its officers (collectively "Diamond Z"), argue Debtor is judicially estopped from bringing the action or, in the alternative, lacks standing to do so because it failed to disclose an executory contract and potential cause of action in its bankruptcy case.

The state court vacated a trial setting pending clarification of these bankruptcy issues and their impact on the litigation before it. Debtor then reopened the bankruptcy case, and it and Diamond Z have made their submissions and arguments. The Court has considered carefully the record as presented by the parties, and

their several contentions. This Decision constitutes the Court's findings of facts and conclusions of law in this contested matter. Fed. R. Bankr.P. 7052, 9014.

## FACTS AND BACKGROUND

Debtor was formed in 1997 and is solely owned by Melvin J. Zehr. Debtor and Diamond Z entered into two contracts in 1998.[1] The one at issue is a "Licensing Agreement" which went into effect August 1, 1998.[2] The Licensing Agreement gives Diamond Z the right to manufacture, promote and sell the "Zehr HG 7000," a horizontal grinder Debtor designed. Though not explained in the pleadings, according to Diamond Z's web site these machines are used to grind up various kinds of solid waste and debris, like tires or tree limbs.[3]

Under the 15–year Licensing Agreement, Debtor granted Diamond Z an exclusive license for the first five years, and non-exclusive licenses for the second and third five-year periods. Diamond Z agreed to pay Debtor $20,000.00 for each Zehr HG 7000 it manufactured during the exclusive license period, and $15,000.00 per unit during the non-exclusive periods. According to Debtor's complaint, Diamond Z has never manufactured a single Zehr HG 7000 and, thus, has never paid Debtor any licensing fees. The Licensing Agreement also contains a non-competition section which prohibits Debtor from manufacturing and distributing the Zehr HG 7000, and prevents Diamond Z from developing, manufacturing, distributing or selling roto-grinders and horizontal grinders except the Zehr HG 7000.

According to Debtor's state court complaint, see Doc. No. 94 at Ex. A, Diamond Z expressed concern about the cost of the licensing fees in a July 1999 letter. By

---

1.  Debtor's disclosure statement notes Zehr helped found Diamond Z. Doc. No. 32 at 2.

2.  The other is a Consulting Agreement.

3.  See http://www.diamondz.com (last visited Dec. 21, 2006).

September 2001, the parties were negotiating the sale of Debtor's assets to Diamond Z in a proposal entitled "Property & Technology Transfer Agreement." Debtor filed its chapter 11 petition on November 27, 2001, the same day it received a letter from Diamond Z with another offer to buy Debtors' assets including, apparently, the Licensing Agreement.

Debtor indicated in its bankruptcy schedules that it had no executory contracts or unexpired leases. *See* Doc. No. 4 at sched. G. Both the chapter 11 disclosure statement and plan of reorganization also stated Debtor had "no executory contracts." *See* Doc. Nos. 32 at 10; 33 at 6. Furthermore, Debtor did not reference in its disclosure statement or plan the ongoing negotiations it was having with Diamond Z to sell its various rights and assets. Although Diamond Z was not listed as a creditor, and therefore did not receive formal notice of Debtor's bankruptcy, it did have actual knowledge of Debtor's case.[4]

In its state court complaint, Debtor alleges that in September or October of 2002, Diamond Z threatened to breach the Licensing Agreement and start manufacturing horizontal grinders other than the Zehr HG 7000, unless Debtor accepted its latest offer within a week. *See also* Doc. No. 95 at Ex. F. In fact, Debtor alleges (though Diamond Z denies) that Diamond

Z asserted it was already starting to build a horizontal grinder of its own design. There is no proof in the record that Diamond Z actually started building such grinders. It is undisputed that, notwithstanding these allegations, negotiations between Diamond Z and Debtor continued into 2003.

An order confirming Debtor's plan was entered January 16, 2003. *See* Doc. No. 67. The plan provided for a 100% payout to creditors, with plan payments to be financed through Debtor's continued operation of the business and future grinder sales. The bankruptcy case was closed on April 14, 2003.[5]

Following confirmation, negotiations between Debtor and Diamond Z continued. Debtor alleges Diamond Z made an offer to terminate both the Consulting and Licensing Agreements and enter into a new 10–year "Manufacturing and Distribution Agreement." Debtor also claims Diamond Z, in a letter dated April 3, 2003, wrongfully attempted to terminate the Licensing Agreement.

Nevertheless, negotiations continued. Debtor signed a letter of intent in May of 2003 under which Diamond Z agreed to purchase all of Debtor's intellectual property in horizontal grinders and pay Debtor $10,000.00 for every horizontal grinder Diamond Z sold for a period of ten years.

---

**4.** It appears, by its own submissions, that Diamond Z knew about Debtor's bankruptcy almost from its inception. Based on a January 7, 2002 letter from Diamond Z's general counsel to Debtor's bankruptcy attorney, Diamond Z was aware of the bankruptcy, and may have even attended Debtor's § 341(a) meeting of creditors. Doc. No. 95 at Ex. C.

**5.** Under the Bankruptcy Code in effect at the time, confirmation effected a discharge of all pre-petition claims, replacing those obligations with the payment requirements of the plan. *See* § 1141. Once "substantial consummation" of the confirmed plan occurs, it

may no longer be modified. § 1127(b). Substantial consummation is defined in § 1101(2) and interpreted judicially. *See In re Stevenson,* 138 B.R. 964, 967–8 (Bankr.D.Idaho 1992). Typically, chapter 11 cases close relatively quickly after confirmation and substantial consummation. *Id.; see also* §§ 1142–1144. (All statutory citations in this Decision are to the Bankruptcy Code, Title 11, U.S.Code. This case precedes the effective date of the amendments to the Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8.)

Negotiations to finalize an understanding continued into 2004, but the parties ultimately failed to strike a final deal. Meanwhile, starting in June 2003, Debtor alleges Diamond Z started to manufacture certain grinders in violation of the Licensing Agreement.

Debtor filed suit against Diamond Z on October 5, 2004 in Idaho state court,[6] seeking among other relief, a declaratory judgment that the Licensing Agreement is still in full force and effect, an injunction, and damages arising from Diamond Z's alleged manufacture of certain grinders in violation of the Licensing Agreement. Diamond Z raised Debtor's failure to disclose the Licensing Agreement in its bankruptcy as a defense to Debtor's standing, and in support of a claim of judicial estoppel. The state court agreed in some fashion that the bankruptcy issues needed to be resolved before the action could continue.[7]

On August 28, 2006, Debtor filed a motion to reopen the chapter 11 case, which was granted.[8] Debtor then filed a motion asking this Court for an order confirming the Licensing Agreement "rode through" the bankruptcy case. Doc. No. 84. Debtor also amended its schedule B to disclose the Licensing Agreement. Doc. No. 91.[9]

Diamond Z objected to Debtor's "ride through" motion, arguing its failure to disclose the Licensing Agreement in the chapter 11 schedules violated § 521 and that it remained property of the bankruptcy estate pursuant to § 554(d). Doc. No. 93. Diamond Z also argues Debtor's cause of action remains estate property because Debtor failed to disclose it in the plan or the disclosure statement. *Id.* Finally, Diamond Z claims Debtor is barred by judicial estoppel from bringing the state court action. *Id.*

## DISCUSSION AND DISPOSITION

### A. Whether the Licensing Agreement "rode through" the bankruptcy

Section 365 governs treatment of executory contracts[10] and states "the trustee, subject to the court's approval, *may* assume or reject any executory contract or unexpired lease of the debtor." *See* § 365(a) (emphasis added). The subsection is permissive. *In re Hernandez,* 287 B.R. 795, 803 (Bankr.D.Ariz.2002). Similarly, § 1123(b)(2), which applies to chapter 11 cases, provides that "a plan *may*—subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section" (emphasis added). Aside from certain express statutory exceptions, *see, e.g.,* § 365(d)(1), the failure to assume or reject an executory contract does not automatically result in

---

6. *JZ, LLC v. Diamond Z Trailer, Inc.,* No. CV–2004–10005 (3rd Jud. Dist., State of Idaho).

7. The parties characterize the state court's comments and ruling in various ways. They did not provide this Court any orders, minutes or transcripts, leaving the matter in some doubt. However, the parties did agree that their intent, and that of the state court, was to have this Court address the matters discussed in this Decision.

8. The reopening of a closed bankruptcy case is a ministerial act that functions primarily to enable the file to be managed by the clerk as an active matter. Reopening, by itself, lacks

independent legal significance and determines nothing with respect to the merits of the case. *Menk v. LaPaglia (In re Menk),* 241 B.R. 896, 913 (9th Cir. BAP 1999).

9. This amendment, long after confirmation of the plan and closing of the case, was not shown to have any legal significance.

10. The parties concede the Licensing Agreement is an "executory" contract. *See, e.g.,* Doc. Nos. 84 at 2 (Debtor's brief) ("Diamond Z asserts, and in hind-sight, JZ agrees, that the license agreement at issue is an executory contract.").

an assumption or rejection of the contract. Accordingly, when a debtor neither assumes nor rejects an executory contract, it is said to "ride through" the bankruptcy "as though the bankruptcy had not happened." *In re Texaco Inc.*, 254 B.R. 536, 557 (Bankr.S.D.N.Y.2000). This is true even if the contract may not be assumed. *See Stumpf v. McGee (In re O'Connor)*, 258 F.3d 392, 405 (5th Cir.2001).[11]

The "ride through" doctrine [12] is purely a creature of case law, *see Hernandez*, 287 B.R. at 799, and has its roots in the Fourth Circuit's decision in *Consol. Gas Elec. Light & Power Co. v. United Rys. & Elec. Co.*, 85 F.2d 799, 805 (4th Cir.1936). The *Consolidated* court held that an executory contract "remains in force in a proceeding under section 77B [of the Bankruptcy Act] until it is rejected, and unless rejected, it passes with other property of the debtor to the reorganized corporation." *Id.*

■ The Ninth Circuit took a similar stance in *Smith v. Hill*, 317 F.2d 539, 543 n. 6 (9th Cir.1963), holding that in Chapter XI proceedings under the Bankruptcy Act, an executory contract continues in effect if the debtor in possession fails to affirmatively assume or reject it. *Id.* Though decided under the Act, *Hill* has been cited by several Code-era bankruptcy courts in cases discussing the "ride through" doctrine. *See Hernandez*, 287 B.R. at 800; *In re Cajun Elec. Power Co-op., Inc.*, 230 B.R. 715, 734 (Bankr.M.D.La.1999); *In re Parkwood Realty Corp.*, 157 B.R. 687, 690 (Bankr.W.D.Wash.1993); *Polysat, Inc. v. Union Tank Car Co.*, 152 B.R. 886, 890 (Bankr.E.D.Pa.1993).[13]

The "ride through" doctrine has also been recognized by the U.S. Supreme Court and a leading bankruptcy treatise. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 546 n. 13, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (noting in dicta that when a "contract is neither accepted nor rejected, it will 'ride through' the bankruptcy proceeding and be binding on the debtor even after a discharge is granted."); 3 Collier on Bankruptcy ¶ 365.04[3] at 365–33 (15th ed. rev.2006) ("If the trustee or debtor in possession fails either to assume or reject a contract by separate order in the plan, it appears that the contract would continue in existence.").

Hernandez provided a more modern formulation of the doctrine:

> The ride-through doctrine is simply the traditional manner in which the courts deal with executory contracts, that for some reason were not assumed or rejected pursuant to § 365 prior to or at confirmation ... When an executory contract is not addressed by the debtor in a Chapter 11 plan or by separate motion, the doctrine applies and the contract becomes binding on the reorganized debtor. In this manner, the contract is unaffected by the bankruptcy and the interests of both parties to the contract are preserved.

---

11. The parties have not analyzed whether the Licensing Agreement is assumable or not under § 365(c). *See Perlman v. Catapult Entm't (In re Catapult Entm't)*, 165 F.3d 747 (9th Cir.1999).

12. There is another bankruptcy doctrine bearing the "ride through" sobriquet, which is not implicated and should be distinguished from that involved in the present case. *See, e.g., In re Steinhaus*, 349 B.R. 694 (Bankr.D.Idaho 2006).

13. Furthermore, "[w]here the text of the Code does not unambiguously abrogate pre-Code practice, courts should presume that Congress intended it to continue unless the legislative history dictates a contrary result." *In re Bonner Mall P'ship*, 2 F.3d 899, 913 (9th Cir.1993) (citing *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)).

287 B.R. at 801. *Hernandez* observed that "ride-through" is "a well-recognized and established legal doctrine." *Id.* at 800.

In opposition to these authorities Diamond Z cites, among other cases,[14] *Cusano v. Klein,* 264 F.3d 936, 945–46 (9th Cir. 2001) and *Stein v. United Artists Corp.,* 691 F.2d 885, 893 (9th Cir.1982). *Cusano,* a chapter 11 case, holds that assets not scheduled pursuant to § 521(1) are not abandoned to the debtor pursuant to § 554(c) and thus remain property of the bankruptcy estate. 264 F.3d at 945–47. It cites *Stein,* a pre-Code case, which held that only property "administered or listed in the bankruptcy proceedings" reverts to the bankrupt. 691 F.2d at 893.

Those cases, however, are distinguishable for several reasons. First, unlike *Hernandez* and the cases cited therein, they do not involve executory contracts or the "ride-through" doctrine.

Furthermore, neither *Cusano* nor *Stein,* nor the cases cited therein,[15] discuss the effect of § 1141(b), which states, "Except as otherwise provided in the plan or the order confirming the plan, *the confirmation of a plan vests all of the property of the estate in the debtor.*" (Emphasis added).[16] Since operation of § 554(c) does not come into play until the time of the closing of a case then "section 554(c) has no applicability to ... any chapter 11 case after a plan has been confirmed and the property of the estate has revested in the debtor." *Wells Fargo Bank, N.A. v. D & L Nicolaysen (In re D & L Nicolaysen),* 228 B.R. 252, 261 (Bankr.E.D.Cal.1998). *See also, In re Phoenix Petroleum Co.,* 278 B.R. 385, 403 (Bankr.E.D.Pa.2001) ("[The] explicit language of section 1141(b) provides that all assets, i.e., even undisclosed claims, which were property of the bankruptcy estate vest in the debtor after confirmation unless the confirmed plan or the order of confirmation state otherwise.").[17]

■ It is true that every debtor has "a duty to prepare schedules carefully, completely, and accurately." *Cusano v. Klein,* 264 F.3d 936, 946 (9th Cir.2001) (citing *In re Mohring,* 142 B.R. 389, 394 (Bankr. E.D.Cal.1992)). In chapter 11 cases, an additional purpose of full disclosure is so all parties can make an informed decision on the plan of reorganization. *Alvarado v. Walsh (In re LCO Enters.),* 12 F.3d 938, 944 (9th Cir.1993) (Trott, J., dissenting).

■ The Court is concerned the "ride through" doctrine not be viewed as an excuse to ignore [18] or cavalierly deal with the serious duties of disclosure. Still, sev-

14. Diamond Z cites several cases dealing with § 523 nondischargeability and § 727 denial of discharge actions in support of its disclosure argument. *See* Doc. No. 93 at 14–15. Neither of those sections apply to the present matter.

15. *See, e.g., Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524 (8th Cir.1991); *Hutchins v. IRS,* 67 F.3d 40 (3rd Cir.1995).

16. There was nothing in Debtor's plan or the order of confirmation that "otherwise provided." *See* Doc. Nos. 33, 67.

17. Additionally, there have been several chapter 11 cases where executory contracts "rode-through" even though they were not scheduled. *See, e.g., In re Parkwood Realty Corp.,* 157 B.R. 687, 691 (Bankr.W.D.Wash.1993) (unscheduled shareholder's agreement); *In re Cont'l Country Club, Inc.,* 114 B.R. 763 (Bankr.M.D.Fla.1990) (unscheduled employment contract); *In re DeVlieg, Inc.,* 1993 U.S. Dist. LEXIS 9297 (N.D.Ill.1993) (unscheduled installment sales contract). Admittedly, the factual and procedural postures of the above cases are distinguishable from the present case.

18. Diamond Z argues Debtor cannot "conceal" the Licensing Agreement from creditors while obtaining their vote on a reorganization plan. There is no proof before this Court of any intentional concealment. Failure to disclose could have been no more than error of Debtor or Debtor's bankruptcy attorney.

eral of the "ride-through" cases address situations where an executory contract was not scheduled. Even *Hernandez,* though not addressing the issue of failing to schedule an executory contract, held that "Given its historical acceptance and general application by the courts, the court believes that the ["ride-through"] doctrine applies any time a debtor fails to address an executory contract whether that failure is inadvertent or intentional." [19] Nor can the Court ignore the plain language of § 1141(b). It also can be noted that Diamond Z clearly knew of the existence of the Licensing Agreement simultaneously with its knowledge of the bankruptcy case, and could have forced not just disclosure but also a deadline for Debtor to decide whether to assume or reject the Licensing Agreement. *See* § 365(d)(2).

Based on the particular facts of this case and the foregoing discussion, the Court concludes the Licensing Agreement "rode through" Debtor's bankruptcy case. As established by *Hernandez,* this simply means "the contract is unaffected by the bankruptcy and the interests of both parties to the contract are preserved." 287 B.R. at 801.

## B. Whether Debtor's cause of action remains property of the bankruptcy estate

Diamond Z next argues the cause of action presented to the state court is itself property of the bankruptcy estate. Diamond Z claims, in this regard, that the pending state court cause of action accrued prior to the confirmation of Debtor's plan. In support of this argument, Diamond Z points to Debtor's complaint which alleges that in September or October of 2002—at least two months prior to confirmation of the plan—a representative from Diamond Z threatened to breach the Licensing Agreement. Based on these threats, Diamond Z alleges Debtor's owner discussed the possibility of litigation prior to confirmation.

■■■■ Causes of action constitute property of the estate under § 541(a)(1) and are assets which must be formally listed. *Cusano,* 264 F.3d at 947 (citing *Vreugdenhill,* 950 F.2d at 526). Generally though, a debtor is not obligated to schedule a cause of action that did not accrue prior to bankruptcy. *Cusano,* 264 F.3d at 947 (citing *Brassfield v. Jack McLendon Furniture, Inc.,* 953 F.Supp. 1424, 1433 (M.D.Ala.1996); *Erickson v. Baxter Healthcare,* 94 F.Supp.2d 907, 912–13 (N.D.Ill.2000)). To determine when a cause of action accrues, we must look to state law. *Cusano,* 264 F.3d at 947 (citing *In re Folks,* 211 B.R. 378, 384 (9th Cir. BAP1997)). Under Idaho law, "a cause of action for breach of contract accrues at the

---

**19.** Some non-case authorities also support the concept that failure to disclose an executory contract should not negate the "ride-through" doctrine:

There are many cases in which there are thousands of ordinary contracts [i.e., purchase orders, equipment leases, etc.] which normally "ride-through" without being scheduled and without notice being given to the other party. In very large such cases, it would be an administrative headache to schedule and notify all of them. The debtor and the other party expect to perform these contracts without formality. In other words, the debtor's failure to schedule such contracts is not accidental or inadvertent. The present system presently works in those types of cases.

Reforming the Bankruptcy Code: National Bankruptcy Conference Code Review Project 147 (rev. ed.1997). *See also* David G. Epstein & Steve H. Nickles, The National Bankruptcy Review Commission's § 365 Recommendations and the 'Larger Conceptual Issues,' 102 Dick. L.Rev. 679, 689 (Summer 1998) (citing to and agreeing with remarks of the National Bankruptcy Conference Code Review Project on "ride through").

time of breach." *Hall v. Forsloff,* 124 Idaho 771, 864 P.2d 609, 612 (1993).

█ Debtor alleges in its complaint that Diamond Z wrongfully attempted to terminate the Licensing Agreement in April of 2003. It alleges Diamond Z started manufacturing grinders, in breach of the contract's non-competition clause, starting in June 2003. Both of these events occurred years after filing. Even if Debtor had cause, pre-petition, to think Diamond Z might attempt to breach the Licensing Agreement, no cause of action accrued under Idaho law since no actual breach had occurred.[20] Accordingly, the state court cause of action is not undisclosed property of the bankruptcy estate.

## C. Whether Debtor's cause of action is barred by judicial estoppel

█ Finally, Diamond Z argues Debtor's cause of action is barred by judicial estoppel. Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *In re Pich,* 00.4 I.B.C.R. 183, 186 (Bankr.D.Idaho 2000) (citing *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 601 (9th Cir.1996)). "In the bankruptcy context, a party is judicially estopped from asserting, after Bankruptcy, a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 783 (9th Cir.2001) (citing *Hay v. First Interstate Bank of*

*Kalispell,* N.A., 978 F.2d 555, 557 (9th Cir.1992)).[21]

The parties ask this Court to opine on the applicability of judicial estoppel as a defense to Debtor's state court action. Ordinarily, it is the second court, i.e., the one before which the post-bankruptcy action is asserted and litigation is pending, that properly considers the question. This Court has noted that:

> Judicial estoppel enables a court to protect itself from manipulation. The interested party is thus the court in which a litigant takes a position incompatible with one the litigant has previously taken. The tribunal in which the litigant made the first statement could also be interested ... but it is not in a position to do anything about its interest. Therefore, for all practical purposes, the interests of the second court are uniquely implicated and threatened by the taking of an incompatible position.

*Pich,* 00.4 I.B.C.R. at 186 (quoting *Rissetto,* 94 F.3d at 604–05).

This Court believes the judicial estoppel decision rightly belongs to the state court. However, both parties expressly asked this Court for a determination of the issue, and both appeared to indicate that the state court, in vacating trial and staying proceedings pending this Court's consideration of the bankruptcy issues, likewise desired this Court's view on judicial estoppel.

**20.** Diamond Z's attorney acknowledged at hearing that, "I can accept that with respect to the repudiation of the licensing agreement that at the time of confirmation, Diamond Z had not built any grinders so arguably, [Debtor] was not damaged by ... Diamond Z's sale of the competing grinder at that point for example." *See* Doc. No. 105 (Hearing Tr. vol. 1, 45:11–15 Oct. 30, 2006).

**21.** This is thus similar, but not identical, to the issue addressed in part B of this Decision, which focused on whether the cause of action accrued pre-petition and was not disclosed. *Hamilton* makes clear that judicial estoppel may apply to a cause that accrued post-petition that a chapter 11 debtor fails to disclose in a disclosure statement or plan.

As found above, the Licensing Agreement rode through the chapter 11 case, and the cause of action did not accrue prior to the bankruptcy filing. The Court further finds both the alleged attempt to terminate the agreement in April 2003, and the alleged breach in June 2003, arose after confirmation of the plan which occurred on January 16, 2003. There is thus no basis to find Debtor judicially estopped from prosecuting the cause of action.[22]

In this Court's opinion, there is no bankruptcy impediment to the underlying state court trial. However the case law and principles of comity instruct that the ultimate decision regarding estoppel should be left to the state court, which is the tribunal "uniquely implicated and threatened by the taking of an incompatible position." Accordingly, this Court simply offers it's view *supra*, and will leave the final decision to the state court.

## CONCLUSION

Based on the entirety of the record presented and on the foregoing findings, conclusions and analysis, the Court determines the Licensing Agreement "rode through" the bankruptcy and that JZ, LLC, the reorganized debtor, has standing to sue upon it. The Court also determines the underlying state court cause of action accrued post-petition and is not property of the bankruptcy estate. Finally, the Court believes the doctrine of judicial estoppel is inapplicable.

Counsel for Debtor may submit a proposed order in accord with this Decision.

---

22. Even though Diamond Z may lack this defense, nothing from a bankruptcy perspective appears to prevent it from asserting any other available defense regarding the contract in state court. *Accord Hernandez,* 287 B.R. at 801.